**Patricia D. DUFFER,**
**Plaintiff-Appellee-Cross-Appellant,**

v.

**AMERICAN HOME ASSURANCE COMPANY,**

**Defendant-Appellant-Cross-Appellee.**

No. 74–2037.

United States Court of Appeals, Fifth Circuit.

May 12, 1975.

E. Lawrence Merriman, Texarkana, Tex., for defendant-appellant-cross-appellee.

Dale Edwards, Texarkana, Tex., for plaintiff-appellee-cross-appellant.

Before WISDOM and DYER, Circuit Judges, and KRAFT *, District Judge.

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

1. "Section II
Part B
Definition Of Injury And Scope Of Coverage
    Hazard H-12
24-Hour Accident Protection While On A Trip—Business Only. (Inside or Outside City Limits)

.    .    .    .    .

Description Of Hazards
Such insurance as is afforded to an Injured Person to which this Hazard H-12 applies, shall apply only to injury, . . . sustained by such person anywhere in the world while on the business of the Policyholder and during the course of any bonafide trip made by the Insured Person.
Such trip shall be deemed to have commenced when the Insured Person leaves his residence or place of regular employment for the purpose of going on such a trip, whichever last occurs, and shall continue until such time as

C. WILLIAM KRAFT, Jr., District Judge.

American Home Assurance Company (insurer) here appeals from an adverse judgment obtained by Patricia D. Duffer (beneficiary) in her suit upon a group travel insurance policy issued by the insurer to Temtex Leisure Vehicles, Inc., a subsidiary of Temtex Industries, Inc. (employer), covering all the employer's officers, managers and sales personnel under age seventy.

The beneficiary had been so designated by her husband, E. C. Duffer, III (insured), who was killed in a motor vehicle collision on November 27, 1972. At the time of his death the insured was Controller of the employer and, so, an insured subject to the terms of the policy then in force, the provisions of which presently pertinent appear below.[1] The insurer's appeal challenges numerous findings of the trial court, to which the case was tried without jury. The beneficiary's limited cross appeal raises a single question. In this diversity action the law of Texas governs these questions.

 Insurer's first contention is that the trial court erred in finding that the insured was, at the time of his death, "on assignment by or at the direction of the" employer,[2] within the meaning of the policy definition. The evidence of

he returns to his residence or place of regular employment whichever first occurs.

.    .    .    .    .

Definitions    .
The term 'while on the business of the Policyholder' as used in this Hazard means while on assignment by or at the direction of the Policyholder for the purpose of furthering the business of the Policyholder, provided that injury sustained during the course of every day travel to and from work . . . shall not be deemed to be sustained while on the business of the Policyholder."

2. Finding of Fact No. 20.
"E. C. Duffer, III, had the authority as controller for the Policyholder to make decisions regarding his trips, assignments and actions for the purpose of furthering the business of the Policyholder and thus at the time of his death was on assignment by or at the direction of the Policyholder furthering the business of the Policyholder."

the nature of insured's position as Controller and the testimony of Marry Ward were sufficient to support this finding.

■ The next contentions of the insurer are that the trial court erred in finding that, at the time of his death, the insured was engaged in travel: (a) "for the purpose of furthering the business of . . ." his employer [3]; (b) but was not engaged in "the course of every day travel to and from work . . ." [4]; "on the business" of his employer [5]; (d) and was in "the course of a 'bona fide trip.'" [6]

The facts so found by the trial court are ultimate facts and it becomes necessary to examine the trial testimony to determine whether that was sufficient to have permitted the trial court to have found, directly or by reasonable inference, underlying facts essential to support the ultimate facts so found.

Our review discloses that insured had a bachelor's degree in finance and accounting and was continuing study to be certified as a CPA. After army service, he was first employed as an accountant by the predecessor of Monnfield Industries. When the latter was acquired by Temtex Industries, as a subsidiary, he remained and was promoted to Assistant Controller. Later, about April 1, 1972, he was offered and accepted the position of Controller of Temtex Leisure Vehicles, Inc., another subsidiary of the same corporate parent. Between April and July, 1972, insured travelled about 130 miles daily between his home in Garland and his work outside Malakoff, Texas. During that period, because his new employer was getting into production in a new plant, he worked long hours and seldom came home to dinner. In early July he moved to a mobile home in Athens, Texas, about 8 miles from his work, while building a new home in Malakoff, into which he moved in September, 1972. His new home, where he resided until his death, was between 3 and 4 miles from his work. His long hours of work continued until early November 1972, when the employment of a new General Manager and an accountant-bookkeeper materially lightened his burden. Thereafter his usual hours of employment at the plant were 8:00 A.M. to 5:00 P.M. and, generally, he left home around 8:00 A.M. and returned around 6:00 P.M. On occasion, but not regularly, he would return to the plant in the evening to do additional work. On Monday nights it was his custom, in season, to watch Monday Night Football at home at 8:00 P.M.

Claude Smart, Purchasing Agent of the employer, had his office near the insured's office. Neither Smart nor the insured then routinely returned to employer's plant for additional work in the

3. Finding of Fact No. 17.
   "At the time of the automobile accident which resulted in the death of E. C. Duffer, III, he was then engaged in the performance of a function for the purpose of furthering the business of Temtex Leisure Vehicles, Inc., the policyholder."

4. Finding of Fact No. 18.
   "At the time of the automobile accident which resulted in the death of E. C. Duffer, III, the date was November 27, 1972, and the time was approximately 6:00 P.M., and at that time:
   a. He was on a trip from his residence for the purpose of furthering his employer's business;
   b. He was not in the course of 'everyday travel to and from work';
   . . . . . .
   d. He had already performed his usual and ordinary tasks of work for that day with such employer."

Finding of Fact No. 19.
   "Those injuries received by E. C. Duffer, III, in the automobile accident and which said injuries resulted in his death were not sustained during the course of everyday travel to and from work."

5. Finding of Fact No. 15.
   "At the time of the automobile accident which resulted in the death of E. C. Duffer, III, he was then 'on business of the policy holder', as that term is defined in the insurance policy in question."

6. Finding of Fact No. 16.
   "The automobile accident which resulted in the death of E. C. Duffer, III, occurred during the course of a 'bona fide trip.'"

evening, though, occasionally, they did so on special assignments or when unusual circumstances indicated such need.

In the afternoon of Monday, November 27, 1972, an audit in process and an inventory taken having disclosed a shortage of materials, Smart and the insured discussed the problem and agreed to return to the plant together that evening to search for the missing material and, if unsuccessful, to prepare to take another inventory. Later, as they left employer's building, they decided to go home together, dine, go to feed deer and then return to the plant. However, they encountered Mrs. Smart in the employer's parking lot. She wanted her husband to go with her to meet a realtor and to look at a house with a view to possible purchase. Smart and the insured then changed their plans. They agreed that Smart should go with his wife, look at the house, get a sandwich nearby and be picked up later by the insured at the realtor's parking lot; that insured would go home, dine and pick up Smart at the realtor's parking lot. The insured drove home but did not dine, because his wife and one child were ill and dinner had not been prepared. After a short interval he left his home, intending to pick up Smart at the realtor's parking lot. The pick-up of Smart would have required a deviation of about one mile from the direct route between insured's home and the employer's plant. Insured intended to then go with Smart to the employer's plant for the purpose previously agreed. Whether the insured and Smart would have gone first to feed deer is uncertain, because the deer feeding and observation required sufficient daylight to see whether food previously left had been touched and to note the number of deer tracks in feeding area. En route from his home to the realtor's office the insured met his death in an auto collision about 6:00 P.M.

We conclude that this testimony, uncontradicted for the most part and accepted as credible by the trial court, was sufficient to have permitted the trial court to find the underlying facts supportive of the ultimate facts it found. Certainly, its ultimate findings were not clearly erroneous.

■ The insurer strongly presses its argument that the travel in which decedent was engaged at the time of his death was "every day travel to and from work," which, under the policy definition, "shall not be deemed to be . . . while on the business of . . ." the employer. The trial court found this language to be ambiguous and, so, construed it most favorably to the beneficiary. On this score we disagree both with the insurer and the court below. Had the policy intended to exclude all travel to and from work or all travel between home and place of employment it could have done so simply. The modifying words "every day" before the phrase "travel to and from work" cannot be disregarded as meaningless, but must be given their plain, ordinary and generally accepted meaning. Western Reserve Life Insurance Company v. Meadows, 152 Tex. 559, 261 S.W.2d 554, 557 (1953).

■ In the context of the policy provisions we opine that the phrase "every day travel to and from work" means travel between the insured's home and his regular place of employment for the sole purpose of reaching either destination on days and at hours normally related to his regular hours of employment. We approve the finding of trial court, because it is evident that insured's intended travel to his place of regular employment on this Monday evening was after he had completed his normal hours of employment and had returned to his home, where, ordinarily, he would have remained to watch a football game on television. His travel to meet and pick up the purchasing agent, Smart, was for the purpose of endeavoring to ascertain the cause of an inventory shortage, scarcely an every day event, which had only been discovered that afternoon. Moreover, in going from his home to pick up Smart, the insured was obliged to deviate about one mile from his usual direct course to his employer's plant.

Counsel have cited no Texas cases construing this or substantially similar language. Insurer's counsel has cited two federal district court cases with which we do not disagree.

Morningstar v. Insurance Company of North America (D.C.S.D.N.Y.1969), 295 F.Supp. 1342, dealt with a policy, which provided "commutation travel is excluded from coverage." Recovery was there permitted for the death of the insured, who usually commuted between his home and his office, but who, on the morning of his death, deviated from his normal route to go to the office of General Foods for a business purpose while en route to his own office. The court decided that the insured's deviation, for a business purpose, prevented his trip from home to office from being commutation travel.

Ligo v. Continental Casualty Company (D.C.W.D.Pa.1972), 338 F.Supp. 519, involved a policy which contained a provision excluding "everyday travel to and from work." There, too, recovery was permitted for the death of an insured, who left his home in the morning for his work at the main office of his bank employer, but deviated from the usual course of travel to pick up certain items at a branch bank for delivery at his place of employment, as directed by his employer. He was killed en route to the branch bank. The court held the trip did not constitute everyday travel to his work, because the trip required that deviation.

The following language used by the court in *Ligo, supra,* is urged upon us by the insurer: "The exclusion 'everyday travel to and from work' was intended to apply to one travelling from his home to his place of regular employment for the sole purpose of reaching his place of regular employment. Where there is any deviation for a business purpose, the exclusion does not apply." This language must, of course, be read in light of the question before that court, which did not involve travel for a special business purpose in the evening after the insured's return home upon completion of his regular day's work. In the case before us, too, there was deviation from the direct route between home and office to pick up the purchasing agent, whose presence was essential to the solution of the employer's inventory shortage problem.

Insurer next contests the allowance by the trial court of the statutory twelve per cent penalty and of an attorney's fee [7] to the beneficiary. Insurer points out that the trial court found that the insurer " . . . (h)ad reasonable grounds and acted in good faith in denying Plaintiff's claim and in defending the case . . . " and insists that this finding precludes both allowances. We reject insurer's contention.

■ The Texas statute succinctly makes the insurer's failure to pay, within thirty days after demand, the keystone of liability for twelve per cent damages and attorneys' fees. It is notably silent about any other criteria, such as insurer's action in good faith or reasonable grounds for failure to pay. This court, citing Texas cases, said, in Lumbermen's Mutual Casualty Company v. Klotz (5 Cir. 1958), 251 F.2d 499, 509, that the Texas statute, unlike some others " . . . (i)s not a 'just cause' or 'reasonable cause' penalty statute. Where the 30-day demand has been made, the penalty is due if the Insurer is ultimately held liable on the policy no

7. Article 3.62 of the Texas Insurance Code, V.A.T.S., provides as follows:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company, liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorneys' fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

matter how justifiable was the basis for its unsuccessful defense of non-liability."

The two cases cited in support of insurer's argument are inapposite. Texas Reserve Life Insurance Company v. Dees (Tex.Civ.App.), 368 S.W.2d 886 did not decide that question. In affirming a judgment for the statutory penalty and attorney's fee it used language from which, at best, it might be implied that just cause for failure to pay might be a defense. Great National Insurance Company v. Legg (Tex.Civ.App.), 444 S.W.2d 324, upheld the action of the trial court in granting judgment N.O.V. for the insurer on the issue of penalty and attorney's fee, on the ground that the "forwarding proofs of death or the filing of suit does not constitute a demand within the meaning . . ." of the statute.

The insurer also asserts that the evidence was insufficient to permit a determination of a reasonable counsel fee by the trial court. We find the evidence was adequate for this purpose.

The trial court awarded the beneficiary $100,000, the amount of her loss under the policy, $12,000 damages under the Texas statute and attorney's fee of $6,000, a total of $118,000 with interest from November 26, 1973. Insurer contends that the interest allowance is erroneous, in that: (a) interest on the $12,000 damages should not be allowed before the entry of judgment; (b) interest on the $6,000 attorney's fee should not be allowed; (c) interest on the $100,000 should not be allowed before the entry of judgment. Beneficiary, on her cross-appeal, asserts to the contrary, that interest should have been computed on the $100,000 from the date of her loss.

■ Confusion appears to have arisen from the fact that the trial court, at the conclusion of the trial on November 26, 1973, expressed its intention to render judgment in the beneficiary's favor for the amount of the policy ($100,000) with interest at 6% from the date of the insured's death and to refuse any award of the 12% penalty or of the counsel fee and thereupon indicated that the court would make its actual findings of fact and conclusions of law later. The fact findings and legal conclusions were filed on January 18, 1974, together with the judgment, which, contrary to the trial court's earlier declaration, allowed recovery for the beneficiary's loss, the twelve per cent penalty and an attorney's fee together with interest on the total of $118,000 from November 26, 1973.

We hold that the trial court's oral expression of future intention on November 26, 1973 was not a judgment and that judgment was entered on January 18, 1974. Accordingly, we disregard November 26, 1973 for all purposes of determination of interest.

■ We first consider whether the beneficiary is entitled to recover any interest on any sum at 6% per annum from any date before the entry of judgment. The insurer's contention that no interest was claimed is without merit. The beneficiary's complaint expressly included a claim for "interest at the legal rate." The Vernon's Texas Revised Civil Statutes, Article 5069–1.03 provide:

"When no specific rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable . . . ."

■ The insurer's policy was a written contract which provided that the sum payable on death of insured was $100,000, which was claimed and determined to have been due and payable January 10, 1973. We hold that the beneficiary was entitled to recover interest at the rate of 6% per annum on $100,000 from the date claimed, January 10, 1973 (when the insurer gave notice of rejection of the beneficiary's claim for payment after timely receipt of the required proof of loss) to January 18, 1974. Federal Life Ins. Co. of Chicago v. Kriton (Com. of App. of Tex.), 112 Tex. 532, 249 S.W. 193; Combined Insurance Company of America v. Kennedy (Tex.Civ.App.), 495 S.W.2d 306.

■ We hold, further, that the insurer is not liable for any pre-judgment interest on the $12,000 damages or the $6,000 attorney's fee, because both liabilities arise entirely from the operation of the Texas statute, *supra,* and not from the insurance contract.

The question then arises whether the attorney's fee should be included in the judgment or separately taxed as costs. The explicit language of the statute, "Such attorney's fee shall be taxed as a part of the costs in the case" would seem to leave no room for doubt, but the Texas courts have divided on the question. In Reserve Life Insurance Company v. Miller (Tex.Civ.App.), 300 S.W.2d 343, 349, the court affirmed the action of the trial court in taxing the attorney's fee as costs and held that the balance of the judgment bore interest at 6%. However, in American Nat. Ins. Co. v. Mays (Tex. Civ.App.), 97 S.W.2d 975, 976, the court, taking the opposite view, said:

> "We regard the statutory obligation to pay an attorney's fee as damages awarded beneficiaries of life insurance policies to reimburse them for expenses necessarily incurred in employing attorneys to enforce payment of such policies. As such the judgment for same should bear the statutory interest as provided in article 5072, R.S."

In Republic National Life Insurance Company v. Beard (Tex.Civ.App.), 400 S.W.2d 853, the court, noting the opposing views expressed in two cases previously cited but offering no reason for its action, held that the trial court properly awarded interest from the date of judgment both upon the penalty and upon the amount allowed for attorneys' fees. International Security Life Insurance Company v. Spray (Sup.Ct.Tex.), 468 S.W.2d 347 mentions, but does not decide whether an attorney's fee should be a part of the judgment or taxed as costs. That question was not raised on the ap-

peal. It is authority only for the propositions that (a) the attorney's fee recoverable under the statute includes attorney's fee for appellate services; (b) the award of an attorney's fee is a fact issue for the trial court; (c) the better practice is to allocate attorney's fees for appellate work only if the work is actually done.

■ Absent a controlling decision by the Texas Supreme Court we elect to follow Reserve Life Insurance Company v. Miller, *supra,* in view of the unequivocal language of the statute and hold that the inclusion of the $6,000 attorney's fee in the judgment of the court below was error. This conclusion will, as well, resolve the final question raised by the insurer, namely, whether the trial court erred in reserving, to a post-appeal hearing and determination,[8] any allowance for an additional attorney's fee for services rendered to the beneficiary upon insurer's appeal.

The problem of trial courts in dealing with an award for an attorney's fee for services on appeal at the time of the entry in the trial court of the judgment from which an appeal may or may not be taken has clearly troubled the Texas courts, as shown in Cooksey v. Jordan, 104 Tex. 618, 143 S.W. 141 and International Security Life Insurance Co. v. Spray, *supra,* and the numerous cases cited in the latter. Taxation as costs, for which the statute provides, affords a ready solution to the problem of a post-appeal award of an additional attorney's fee for services actually rendered on appeal, without affecting the certainty of the final judgment.

Accordingly, the record is remanded with directions to: (a) modify the judgment entered below by adding thereto interest on $100,000 as herein indicated and by subtracting therefrom the $6,000 award for pre-appeal attorney's fee; (b) tax, as costs, the $6,000 award for pre-

8. Finding of Fact No. 24.

"That in the event of an appeal, a reasonable attorneys' fee for Plaintiff in addition to the sum of $6,000 herein found would be set by the Court upon presentation to the Court of

evidence as to the proper amount of such fees under the particular circumstances of this case, as such fee is allowed under Article 3.62 of the Texas Insurance Code."

appeal attorney's fee; (c) determine, after hearing, and tax as costs any additional attorney's fee to be awarded for appellate attorney's services, conformably to Article 3.62 of the Texas Insurance Code.