CITY OF AMARILLO, Appellant,

v.

Thomas E. LANGLEY, et al., Appellees.

No. 9385.

Court of Appeals of Texas,
Amarillo.

April 29, 1983.

Rehearing Denied May 18, 1983.

Gibson, Ochsner & Adkins, Randall R. Moore, Merril E. Nunn, City Atty., Amarillo, for appellant.

Hoffman & Wheeler, Tim Hoffman, Amarillo, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This appeal from a judgment awarding appellees Thomas E. Langley, John Langley and Jada Lynn Malone substantial damages against appellant City of Amarillo presents questions on liability, evidentiary sufficiency, jury instructions, special issues, admissibility of evidence, attorney's fees and post-judgment interest. Our analysis of the 22 points reveals no reversible error; therefore, we affirm.

The litigation is based upon a violent encounter between two motorcycles and a police car. The appellees Langley were driving their respective motorcycles through downtown Amarillo, with appellee Malone as a passenger on Tom Langley's motorcycle, at approximately 3:00 a.m. on June 29, 1975. When the Langleys rolled through a red light on 6th Street, Amarillo policeman Jerry Ashford gave chase in his patrol car and broadcast his pursuit of the motorcycles. Policemen Ronald Hudson and Richard Webb, in a second patrol car located ahead of the motorcycles, heard the broadcast. Hudson, who was driving the second patrol car, turned into 6th Street toward the oncoming motorcycles and placed the car diagonally across the street in a maneuver described, and hereafter referred to, as a deterrent block. Tom Langley and Jada Malone collided with the blocking car and were seriously injured. John Langley turned his motorcycle sharply to the left and missed the patrol car but collided with a parked car and was also seriously injured. Significant portions of the evidence are sharply disputed, particularly with reference to the appellees' knowledge that they were being pursued, their speed, whether the rotating beacons on the deterrent car were lit and the timing of, and circumstances surrounding, the deterrent block. Where pertinent, that evidence will be discussed below.

The Langleys and Malone sued the City under 42 U.S.C.A. § 1983 (West 1981) (hereafter "§ 1983") for deprivation of civil rights and under the Texas Tort Claims Act, article 6252–19, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1982) for negligence. Pursuant to a jury verdict generally favorable to the Langleys and Malone, the trial court rendered judgment awarding $222,225.74 to Tom Langley, $23,567.40 to John Langley, and $26,847.70 to Jada Malone, plus attorney's fees totaling $75,590.00 and interest and costs.[1]

Twenty four special issues were submitted to the jury. Its paraphrased findings on liability, numbered to correspond with the special issues, were that (1) policeman Hudson used excessive force, which proximately caused appellees' injury and damages, in arresting them; (2) Hudson was implementing an official policy or custom of the City that proximately caused the use of excessive force; (4) Hudson negligently (a) drove his vehicle into appellees' path, (b) parked his vehicle in the street, (c) failed to grant the right of way to appellees and (d) failed to warn appellees that he was placing his vehicle in their path; (5) each of those acts of negligence was a proximate cause of the collision; (6(b), 8(b)) John Langley and Tom Langley drove their motorcycles at a negligent rate of speed; (7(b), 9(b)) their negligence was a proximate cause of the collision; (10) Jada Malone was negligent (b) in not asking Tom Langley to slow down or (c) in not warning him of the risk involved in the way he was operating his motorcycle; (11(b), (c)) each of her negligent acts was a proximate cause of the collision; (12) each appellee had a joint interest in the trip and joint control of the vehicles; (13) there was a reasonable excuse for policeman Hudson not to turn on his siren; and (22, 23, 24) the City was 80%

1. As set out later, the jury's findings are generally favorable to the appellees on both theories pled. However, the judgment awards amounts in excess of those permitted by § 3 of the Tort Claims Act, art. 6252–19, Tex.Rev.Civ.Stat. Ann. (Vernon Supp.1982) and does not reduce the awards because of comparative negligence findings; thus the judgment necessarily is based on the § 1983 cause of action. The City does not contend that the recovery under § 1983 must be reduced because of the comparative negligence findings.

negligent and each appellee was 20% negligent in the collision. In response to issues 14 through 21, the jury found the damages incurred by each appellee. By its answer to issue 3, the jury failed to find that, prior to the collision, policeman Hudson's vehicle had its emergency flashing lights turned on. In answering the subparagraphs of issues 6 through 11 the jury failed to find various acts of negligence or proximate cause alleged against appellees, except as stated above.

By its first seven points of error, the City challenges its liability on the § 1983 cause of action. By those points, it contends there is no evidence or jury finding that it had an official policy or custom authorizing the use of excessive force in making arrests; that the evidence is factually and legally insufficient[2] to support the jury's answers to special issues one and two, wherein the jury found that policeman Hudson, while implementing an official policy of the City, used excessive force in arresting appellees; that the use of a deterrent block is constitutional; and that the findings of the jury in special issues one and two will not support a conclusion that Hudson deprived appellees of a constitutionally protected interest. Because they are entwined, the points will be reviewed and resolved collectively.

■ To the extent that this case involves rights conferred by United States' statutes, we will be governed by the decisions of United States' courts. *Olson v. Holmes,* 571 S.W.2d 211, 213 (Tex.Civ.App.—Austin 1978), writ ref. n.r.e., 587 S.W.2d 678 (Tex. 1979). At the outset we must analyze § 1983. It states, as pertinent here:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

In *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court applied § 1983 to municipal governments and defined the scope of liability. The critical language of *Monell* is as follows:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

> \* \* \* \* \* \*

> On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless ac-

---

**2.** By points of error 2, 3, 5, 6, 10, 11, 15, 16, 18 and 19 the City contends there is either no evidence or insufficient evidence to support the jury's findings on various issues. By point 22, it contends the findings on certain issues are so against the great weight and preponderance of the evidence as to be manifestly unjust. All

evidentiary challenges will be resolved in accordance with the principles stated in *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Garza v. Alviar,* 395 S.W.2d 821 (Tex. 1965) and *Traylor v. Goulding,* 497 S.W.2d 944 (Tex.1973).

tion pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

436 U.S. at 690–91, 98 S.Ct. at 2035–36 (footnotes omitted; emphasis by the Court).

■ The rule, then, is that a municipality can be held liable under § 1983 for torts of constitutional dimensions inflicted by its personnel pursuant to official policy or custom; but cannot be held liable for torts that do not involve deprivation of constitutional rights or are based solely on the doctrine of respondeat superior. As exemplified by the many cases analyzing and applying *Monell,*[3] the distinction between official or customized torts and unofficial torts is often ephemeral. However, under *Monell,* the proper inquiries are whether (1) there was a municipal policy or custom that, (2) when executed or implemented, (3) produced a constitutional tort, (4) causing injury to the plaintiff. *Garris v. Rowland,* 678 F.2d 1264, 1274 (5th Cir.1982), cert. den., —— U.S. ——, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982).

■ In this case it is undisputed that appellees were injured as a result of the incidents in question. Also, it is well settled that the use of excessive force by police is a constitutional violation, *Screws v. U.S.,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Jenkins v. Averett,* 424 F.2d 1228, 1231–1232 (4th Cir.1970), that will support a § 1983 action. *Clark v. Ziedonis,* 513 F.2d 79, 80 (fn. 1) (7th Cir.1975). Thus, the viable issues in this case revolve around the first two elements discussed above: whether the deterrent block was part of the City's

official policy or custom and, if it was, whether implementation of that policy produced excessive force in the arrest attempt. The City says the appellees proved neither, but after reviewing the evidence we reach the opposite conclusion.

■ Evidence that the deterrent block was official policy or custom was elicited from several City representatives. The mayor of Amarillo testified that the police department was permitted to formulate the day to day operational policies within the department. The Chief of Police and several police officers then testified that the police department uses a deterrent block as an accepted method of stopping a person fleeing arrest, regardless of the nature of the crime or offense. They also testified that the deterrent block used in this case was proper. Thus, there is evidence that by either policy or custom the City sanctioned the use of a deterrent block. The evidence is ample support for the jury finding, in special issue two, that policeman Hudson was following City policy or custom by using the deterrent block in this case and the finding satisfies the first requirement of *Monell.*

■ The next question, then, is whether implementation of that policy or custom caused the use of excessive force. The trial court defined excessive force for the jury by contrasting it with what a reasonable police officer would do.[4] Within that framework, the jury was entitled to believe, because there was testimony, that policeman Hudson attempted to arrest two traffic offenders by driving his vehicle across a substantial segment of the lane in which they were traveling, that he did so at night without turning on warning beacons, and that he did so a few seconds before they

---

3. See, e.g., *Reeves v. City of Jackson,* 608 F.2d 644 (5th Cir.1979) and *Garner v. Memphis Police Dept., Etc.,* 600 F.2d 52 (6th Cir.1979).

4. As pertinent to this point, the court told the jury:

"You are instructed that 'excessive force' means the use of a greater force than was reasonably necessary in the circumstances of this case. What is reasonably necessary is to

be measured against what an ordinary, prudent police officer under the same or similar circumstances would have done.

You are further instructed that a police officer may use such force that is reasonably necessary to overcome any resistance to arrest."

\*　　\*　　\*　　\*　　\*　　\*

arrived at his location when he knew they were traveling toward him at a high rate of speed.[5] Being entitled to believe that testimony, the jury was entitled to find, and did find, that Officer Hudson used greater force than was reasonably necessary, i.e., excessive force. When that finding is collated with the second finding of the jury and the undisputed testimony by Hudson's fellow officers that his use of the deterrent block under the circumstances of this case was proper police procedure, the only conclusion possible is that Hudson used excessive force while implementing an official policy of the City. We conclude, therefore, that Jada Malone and the Langley brothers established a § 1983 cause of action against the City of Amarillo.

■ We have answered most of the City's arguments to the contrary either directly or inferentially in the foregoing discussion. However, three deserve additional comment. The City's most strenuous argument in derogation of the judgment is that there is neither evidence nor a finding that the City has a policy authorizing its employees to use excessive force. That argument, however, slides past the issue. Although no one specifically testified that Amarillo policemen were authorized to use excessive force when making arrests, City representatives did testify to a loosely defined policy of driving a vehicle in front of a person fleeing from the police. That policy apparently permitted use of a deterrent block without delineating conditions precedent or evaluating consequences. When a policeman operating within the ambit of such a policy uses excessive force, the municipality has exposure to liability under § 1983. See *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).[6]

■ Relying on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the City next argues that its deterrent block policy is constitutional but was misapplied by policeman Hudson. The short answer to that argument is that there is no evidence that Hudson misapplied the policy; the evidence is, in fact, that he acted properly and in accordance with police policy, under the circumstances. The concern in *Parratt,* the unauthorized failure of state agents to follow established state procedure, is not present here.

■ Finally, says the City, excessive force must be conduct that deprives a person of liberty without due process and is so brutal as to shock the conscience. *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Hudson's conduct, it says, does not meet that test. We do not agree that the standard is so rigid. As pointed out in *Jenkins v. Averett,* 424 F.2d 1228, 1232 (4th Cir.1970) there is an incontrovertible constitutional right to be free from *unreasonable* interference by police. *Accord: Johnson v. Glick,* 481 F.2d 1028 (2nd Cir.1973). In this case, as noted in footnote 4, *supra,* the trial court defined excessive force for the jury by contrasting it with the actions of a reasonable police officer. That definition is consistent with *Jenkins v. Averett* and correctly states the standard by which police actions are to be measured.

■ In any event, the City has waived any complaint about the definition of excessive force. In its requested instructions to the jury, it contended that excessive force should be measured by standards of reasonableness; it cannot now contend that a different and higher standard is the measure. *Griffin v. Shamburger,* 262 S.W. 144, 147 (Tex.Civ.App.—Amarillo 1924, no writ). Points of error one through seven are overruled.

---

5. As indicated earlier, the circumstances surrounding the deterrent block were highly disputed. Hudson testified, for example, that his warning beacons were on and that only a small portion of his vehicle was across the center line in the opposite lane.

6. In the *Lyons* case, a citizen allegedly injured by a "choke hold", used by Los Angeles police pursuant to official policy, sued the city under § 1983. In disposing of other issues, the Supreme Court observed, "If Lyons has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983."

By its eighth point of error, the City attacks the first special issue on another ground, saying it was a general charge and a comment on the weight of the evidence. The questioned language is as follows:

Do you find from a preponderance of the evidence that on the occasion in question Ronald Hudson knowingly used excessive force in arresting or aiding in the arrest of Thomas E. Langley, John Langley, and Jada Lynn Malone, which proximately caused the injuries and damages suffered by them, if any?

\* \* \* \* \* \*

■ We conclude that the submission was correct. Rule 277, Tex.R.Civ.Pro., permits the trial court to submit an issue either separately or broadly and invalidates objections that the issue is general or includes a combination of elements or issues. *First State Bank, Morton v. Chesshir,* 634 S.W.2d 742, 746 (Tex.App.—Amarillo 1982, no writ). *See* J. Pope and W. Lowerre, *The State of the Special Verdict 1979,* 11 St. Mary's L.J. 1 (1979). Where, as here, the inquiry is about a single act that affected all three appellees almost simultaneously, the single inquiry is permissible. We also observe, as in the preceding point, that in the trial court the City requested a single issue inquiring about Hudson's use of excessive force against all three appellees simultaneously. The issue submitted is almost identical to the one requested by the City, except for the last phrase adding a proximate cause inquiry.

■ Nor does the issue violate Rule 277 by making a direct comment on the weight of the evidence. Tex.R.Civ.Pro. 277. To be a direct comment, the issue must suggest to the jury the trial judge's opinion concerning the matter about which the jury is asked. *Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93 (Tex.Civ.App. —Amarillo 1971, writ ref'd n.r.e.). This issue is a straightforward inquiry and does

not attempt to lead the jury to a particular answer. Point of error eight is overruled.

■ By its ninth point, the City contends the trial court erred in instructing the jury, in special issue no. one, that "special intent to commit excessive force is not required." However, in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the U.S. Supreme Court pointed out that § 1983 "has never been found by this Court to contain a state of mind requirement." *Id.* at 534, 101 S.Ct. at 1912. Thus, the instruction was an accurate statement of the law pertinent to the issue and the trial court did not err in giving it. Point of error nine is overruled.

■ In a post-verdict hearing, the trial court awarded a total of $75,590.00 in attorney's fees, taxed as costs, and also awarded post-judgment interest on the fees. The City does not question the trial court's legal authority to grant attorney's fees in a § 1983 action[7] but, by points of error 10 through 13, contends the evidence is factually or legally insufficient to support the award, the amount is excessive and interest is not recoverable on costs.

Initially, we observe that the award was well within the range of the evidence. The appellees' attorneys testified to the time spent on the case and the value of their services, and disinterested attorneys added supportive testimony that would justify a total fee of as much as $150,000.

■ The City's specific complaints are two-fold. First, it says, the opinion testimony of one of the disinterested attorneys should have been excluded because he based his opinion on information contained in affidavits of work performed, prepared by the appellees' attorneys, instead of personally reviewing the work files. If that were the total foundation for the opinion, the City would be correct. *Moore v. Grantham,* 599 S.W.2d 287 (Tex.1980). However, the attor-

---

7. Section 1988, 42 U.S.C.A. (West 1981), (hereafter § 1988), permits the trial court to award the prevailing party "a reasonable attorney's fee as part of costs." The trial court awarded $56,340.00 for services through trial of the case, an additional $15,750.00 if the City appealed to the Court of Appeals and an additional $3,500.00 if an appeal is taken to the Texas Supreme Court.

ney, who expressed his opinion of a reasonable fee in the area, based the opinion on his personal experience in handling similar cases, on conversations with one of the appellees' attorneys and upon a review of the affidavits which were later admitted into evidence. That is a sufficient foundation for his opinion. *Moore v. Grantham, supra.*

Next, says the City, the award is erroneous because there must be evidence, and there is none, of the fee charged by "an attorney of similar experience." Apparently, the City is arguing that the evidence must be personalized for each attorney who represents a § 1983 litigant. Although the experience of the attorney is one factor that may be considered under § 1988, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)[8], we find no authority that requires evidence of that nature as a condition precedent to an award of attorney's fees.

The City then argues that the award is excessive because appellees' attorneys have the case on a contingent fee contract and may actually receive considerably more than the amount awarded by the trial court. Whether an award is excessive is tested by the abuse of discretion standard, *Buxton v. Patel,* 595 F.2d 1182 (9th Cir.1979), and the existence of a contingent fee contract is also one of the factors that can be considered by the trial court under § 1988. *Johnson v. Georgia Highway Express, Inc., supra.* Here, there is evidence that one of the appellees' attorneys has been working on this case since 1978 and the other since 1980, together investing over 600 hours in the case. There have been two jury trials, one previous appeal, *Langley v. City of Amarillo,* 579 S.W.2d 351 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), and numerous motions, depositions and hearings. From the record, it is fair to characterize this case as major litigation

that, from the appellees' viewpoint, affirmatively satisfies a majority of the considerations relevant under *Johnson.* Thus, even if counsel is ultimately compensated on a contingent fee basis, we cannot conclude that the amount of attorneys' fees awarded by the trial court is so excessive that the court abused its discretion.

Finally, says the City, the trial court was not authorized to award post-judgment interest on the attorney's fees. However, in a case directly in point, the Fifth Circuit has recently held that it is permissible under § 1988 to award a party interest on attorney's fees " 'from the time he should have received the money.' " *Gates v. Collier,* 616 F.2d 1268, 1276–78 (5th Cir.1980). Thus, the trial court did not err in awarding interest from the date of the judgment. *Duffer v. American Home Assurance Company,* 512 F.2d 793 (5th Cir. 1975). Points of error ten, eleven, twelve and thirteen are overruled.

The City utilizes points of error fifteen through twenty to attack a portion of the damages awarded to Tom Langley. By those points it questions the factual and legal sufficiency of the evidence to support the awards of $50,400 for lost wages in the past and $50,000 for lost wages in the future. It also contends each award is excessive.

After reviewing the evidence under the proper standards, we find no error. Although the amount of damages for lost earning capacity is largely within the discretion of the jury, *Fowler v. Pedlar,* 497 S.W.2d 399, 401 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ), the plaintiff is required to prove his lost earning capacity "with that degree of certainty to which the case is susceptible . . . ." *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710 (1943). To the extent it is available, the plaintiff should

---

**8.** Relevant considerations under *Johnson* are: (1) time and labor required; (2) novelty and difficulty of the question; (3) skill required to properly perform the legal services; (4) preclusion of other employment by the attorney because of acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorney; (10) undesirability of the case; (11) nature and length of professional relationship with the client and (12) awards in similar cases.

introduce evidence from which a jury may reasonably measure his earning capacity prior to injury, *Bonney v. San Antonio Transit Company,* 160 Tex. 11, 325 S.W.2d 117 (1959), and project his future loss. *McIver v. Gloria, supra.*

■ Langley's evidence satisfies those principles. At the time of the accident, he was 21 years old. He presented detailed evidence of a work history that began at an early age and continued with few interruptions until approximately ten days before the accident. In his last job, he was earning six hundred to seven hundred dollars per month. He made good grades in school, obtained a G.E.D. after leaving high school during his senior year, took a vocational electronics course at Amarillo College and was interested in obtaining employment in the electronics field.

As a result of the accident, his right leg was badly damaged and was amputated below the knee. Also, he suffered a broken neck, a compound fracture of the right femur, a fractured right clavicle and two cracked ribs. The long term injuries, in addition to the loss of his leg, include substantial loss of motor control on the left side of his body and loss of feeling and sensation on the right side. One of his doctors testified he had incurred permanent physical impairment of 58% of his body and opined that it would be very difficult for Langley to obtain any kind of employment that required two-handed labor.

At the time of trial, Langley had been unemployed for 68 months since the accident but had attended Amarillo College for two semesters. He was still under medical care for problems related to the injuries.

It is obvious that the foregoing evidence is ample support for the verdict. The $50,400 for lost wages in the past is very close to what Langley would have earned at his last job before the accident if he had continued in that employment up to the day of trial with no raises or benefits. Likewise, with his pre-accident employment history and a 58% disability, the jury was clearly justified in awarding this young man in his twenties an additional $50,000 for lost earnings in the future.

Nor are we persuaded that the awards are so excessive as to require reversal or remittitur. *Dallas Ry. & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017, 1021–1022 (1950). They are well within a reasonable evaluation of the evidence and certainly not so large as to be the result of an improper motive. *Fowler v. Pedlar,* 497 S.W.2d 399, 401 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). Points of error fifteen through twenty are overruled.

■ By its twenty-first point, the City says the trial court erred when it refused to allow the City to elicit testimony before the jury of the Langley brothers' use of marihuana on sporadic occasions in the past. There was no evidence that either brother had used marihuana on the day of the accident or within any time frame relevant to the accident.

In refusing to admit the evidence, the trial judge correctly observed that "it would just be for prejudicial purposes only." The evidence would not assist the jury in resolving any issue in the case and undoubtedly would divert its attention from matters properly before it; thus, the evidence was inadmissible. *See Lewis v. Houston Electric Co.,* 39 Tex.Civ.App. 625, 112 S.W. 593 (Tex.Civ.App.1905, no writ). Point of error twenty-one is overruled.

■ By its twenty second point of error, the City contends the jury's answers to several special issues are against the great weight and preponderance of the evidence. The issues focus on the controversy over the beacon lights on the blocking police car. The jury failed to find that "prior to the time of the collision in question the police vehicle driven by Ronald Hudson had its emergency flashing lights turned on . . . ." In later issues, the jury found that Hudson failed to warn appellees that he was placing his vehicle in their path and that the omission was a proximate cause of the collision.

The City argues that the findings and the failure to find were against the great weight and preponderance of the evidence

because four witnesses testified the beacon lights were on before the collision, while only three testified they were not on. The testimony of the three witnesses adverse to the city were not credible, it says, because cross-examination revealed inconsistencies in their testimony. Appellees respond by characterizing the City's argument as "incredible."

The evidence clearly creates questions of fact to be resolved by the jury. The jury resolved those questions against the City and we cannot, under the record before us, conclude that the verdict is manifestly unjust. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973). Point of error twenty-two is overruled.

In addition to their § 1983 cause of action, the appellees alleged a cause of action against the City under the Texas Tort Claims Act (hereafter "the Act"). Art. 6252–19, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1982). By its fourteenth point of error, the City contends the trial court erred in submitting negligence and proximate cause special issues on that cause of action because the City is immune from liability under the Act. Because we have decided that appellees are entitled to retain their recovery under § 1983, questions pertinent to recovery under the Act are immaterial. However, in order to dispose of all issues before us, we have examined the City's arguments, which are based on §§ 14(9) and 14(10) of the Act [9], and conclude they do not demonstrate error.

 The City argues that it is immune under § 14(9) because policeman Hudson was responding to an act of "civil disobedience" by the appellees. However, in *State v. Terrell,* 588 S.W.2d 784, 786 (Tex.1979), the Texas Supreme Court observed that the purposes of § 14(9) are twofold: "1) to exclude liability for any injuries occurring as a result of police or military efforts to control riots and the like, and 2) to exclude liability from a government's decision on *how* to control the riot or whether to control it at all." *Id.* at 786–87. Relying on that language, the Fort Worth Court of Civil Appeals concluded that "civil disobedience" under the section pertains to "commotions involving a large number of persons acting unlawfully in concert." *Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

The Fort Worth court's definition of civil disobedience is consistent with *State v. Terrell, supra,* and we adopt it in this case. By doing so, we necessarily reject the City's contentions. Two motorcycle riding traffic scofflaws do not qualify as a matter of law as a commotion of a large number of persons acting unlawfully in concert.

 The City argues it is immune under § 14(10) because the use of excessive force is the equivalent of an intentional tort. However, the argument is before us without a factual foundation. As we held in resolving point of error nine, under special issue number one the jury was correctly instructed, in accordance with *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that specific intent to commit excessive force is not required. Thus, the excessive force finding, which is an element of the appellees' § 1983 cause of action, cannot support an intentional tort argument under § 14(10) of the Act. Before the City can demonstrate immunity under § 14(10) it is required to either conclusively establish, or obtain a finding, that an intentional tort was committed. *See City of Houston v. Bush,* 566 S.W.2d 33, 35 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). It did neither. Point of error fourteen is overruled.

The judgment is affirmed.

9. Section 14 says the provisions of the Act shall not apply to:

(9) Any claim based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection or rebellion or arising out of the failure to pro-vide, or the method of providing, police or fire protection.

(10) Any claim arising out of assault, battery, false imprisonment, or any other intentional tort including, but not limited to, disciplinary action by school authorities.