**Carolyn McNEILLY, Plaintiff,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, an Illinois Corp., Defendant.**

**Civ. A. No. 86CV–70143–DT.**

United States District Court, E.D. Michigan, S.D.

Nov. 25, 1986.

Gregory E. Snow, Gregory E. Snow, P.C., Detroit, Mich., for plaintiff.

F. Peter Blake, Mount Clemens, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter comes before the court on plaintiff's and defendant's cross-motions for summary judgment. The parties having fully briefed the issues and the court having heard oral argument, plaintiff's motion for summary judgment is granted.

### FACTS

The material facts are undisputed. On April 1, 1984, Industrial Technology Institute of Ann Arbor ("ITI") purchased a $250,000 Blanket Travel Accident Insurance Policy from defendant. ITI purchased the policy for the benefit of its employees and their beneficiaries in the event of an accidental death or dismemberment while traveling on the business of the company. The term "traveling on the business of the company," as defined in the policy, contained an exclusion related to traveling to or from work:

> The term "on the business of the Company" means any trip that is authorized by you for the furthering of your business. This term does not mean the day to day travel to and from work. This term also does not mean a vacation or a leave of absence.

David McNeilly, who was hired by ITI as a skilled robotics engineer on October 1, 1984, was covered by such a policy, and his wife, the plaintiff in this case, was designated as the beneficiary.

Mr. McNeilly was an electronics technician at ITI's Flexible Manufacturing Laboratory in Ann Arbor, though he lived in Milford. His normal working hours were 8:00 a.m. to 5:00 p.m., Monday through Friday. On October 18–20, 1984, ITI was conducting an open house for state and federal officials as well as other individuals who gave substantial endowments to ITI.

Mr. McNeilly was required to be at the facility during this open house because he was conducting the "Thompson-Ghandi Experiment," one which he created, and he was the only one who knew how to perform this experiment. On his way to the open house on Saturday, October 20, at approximately 7:15 a.m., Mr. McNeilly was killed by a drunk driver while traveling westbound on M–14 in Plymouth Township.

ITI and plaintiff sought benefits from defendant under the policy, but defendant denied such requests on the grounds that Mr. McNeilly was engaged in the "day-to-day travel to and from work" when he was killed, therefore the policy did not apply. As a result, plaintiff has brought the instant action alleging breach of contract.

Each party now seeks summary judgment, pursuant to Fed.R.Civ.P. 56, on the grounds that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law.

### DISCUSSION

Plaintiff argues that the exclusionary language of the instant policy does not apply to the accident at issue, as Mr. McNeilly was not engaged in the day-to-day travel to and from work when he was killed. Plaintiff relies on *Duffer v. American Home Assurance Co.*, 512 F.2d 793 (5th Cir.1975), for the proposition that travel to work at times other than normal working hours does not constitute "everyday travel to and from work." 512 F.2d at 797. Plaintiff concludes that because Mr. McNeilly was traveling to work on a day he normally did not work, the exclusionary policy language does not apply.

Defendant contends that the policy exclusion does apply to the instant case, as Mr. McNeilly was traveling to work along his normal commuting route when he was killed. Defendant relies on *Morningstar v. Insurance Company of North America*, 295 F.Supp. 1342 (S.D.N.Y.1969), and *Ligo v. Continental Casualty Co.*, 338 F.Supp. 519 (W.D.Pa.1972), for the proposition that insurance policy exclusions such as the one

at issue will apply to accidents which occur while an employee is traveling along a normal commuting route to his/her place of employment.

In resolving a Fed.R.Civ.P. 56 motion for summary judgment on the grounds of no genuine issue of material fact, the burden is on the movant to clearly establish the nonexistence of any genuine issue of material act, and the evidence must be considered in a light most favorable to the non-moving party. *U.S. v. Articles of Device, Etc.*, 527 F.2d 1008, 1011 (6th Cir. 1976). The instant case is a classic example of a matter which should be resolved by summary judgment, as none of the facts are in dispute. The sole issue that this court must decide is what does the term "day-to-day travel to and from work" mean, and how does this policy exclusion apply, if at all, to these undisputed facts?

For insurance policies such as the one at issue to apply to a given accident, there must be some sort of deviation from normal travel to and from work. The question of deviation, in turn, involves two components, space and time. Spacial deviation, such as discussed in *Morningstar* and *Ligo*, involves an employee deviating from his normal travel route at the request of his/her employer, either to make a special stop on the way to work, or to travel to a destination other than the place of employment. Time deviation, such as discussed in *Duffer*, involves travel to work at times other than normal working hours. Each of these two types of deviation are of *equal* importance, and if *either* is present in a given case, an exclusionary clause such as the one at issue will not apply.

In this case, it is clear that there was no space deviation, as Mr. McNeilly traveled his normal route to work, and his destination was his regular place of business.[1] The result is different as to time deviation.

It is undisputed that Mr. McNeilly's regular working hours were 8:00 a.m. to 5:00 p.m., Monday through Friday, and that he did not normally work on Saturdays. Had the accident at issue occurred during these normal working hours, the instant policy would not apply. However, Mr. McNeilly was killed on a Saturday morning, and the only reason he was coming to work was that his employer specifically asked him to do so. He was coming to work for a special business purpose on a special day, and as such his travel that Saturday morning represented a deviation in time from Mr. McNeilly's day-to-day travel to and from work. It was as much a deviation from his "day-to-day travel to and from work" as if he had been directed by his employer to go to a city other than the Ann Arbor ITI office. Consequently, the exclusionary clause in the instant insurance policy did not apply.[2]

Again, because *Morningstar* and *Ligo* deal only with spacial deviation, the instant decision is not inconsistent with those holdings. There is nothing in either of those cases which indicates that a contrary result would be reached given the instant facts, and because the direction given to Mr. McNeilly to appear at work on a Saturday is of the same magnitude as the instructions to deviate from the normal commuting routes in *Morningstar* and *Ligo*, it is likely that those courts would reach the same conclusion that this court has. Moreover, this decision is in line with the analysis in *Duffer*, a case which does talk about time deviation.

## SUMMARY

Because Mr. McNeilly was traveling on company business when he was killed, but he was not engaged in the normal day-to-day travel to and from work at that time, defendant's insurance policy applies to this

---

1. The affidavit of John A. Brossard, one of defendant's underwriters, to the effect that the instant policy is not intended to cover day-to-day travel to and from work, is not inconsistent with this conclusion, as Mr. McNeilly was not engaged in day-to-day travel to and from work when he was killed.

2. Had Mr. McNeilly's destination been a location other than his regular place of employment, there would have been spacial deviation.

accident. Accordingly, plaintiff's motion is granted, and judgment is entered in favor of plaintiff in the amount of $250,000, together with interest and costs.

SO ORDERED.