Consuelo Pena RENDON, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.

No. 9091.

Court of Civil Appeals of Texas, Amarillo.

May 21, 1980.

Rehearing Denied June 11, 1980.

Mark Smith & Associates, Mark Smith, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Cecil Kuhne, William R. Moss, Lubbock, for appellee.

DODSON, Justice.

In this worker's compensation case, Consuelo Pena Rendon is the appellant and Texas Employers' Insurance Association is the appellee. The jury found, *inter alia*, that Mrs. Rendon was injured in the course of her employment, and that the injury was a producing cause of 26 weeks of total disability and 122 weeks of partial disability. On appeal, Mrs. Rendon brings seven points of error. In essence, she maintains that the jury's failure to find total disability for 401 weeks is against the great weight and preponderance of the evidence; and that the trial court committed reversible error by admitting into evidence an undated notice of injury and claim for compensation filed with the Industrial Accident Board, by permitting Texas Employers' Insurance Association to cross-examine her concerning the undated notice of injury and claim for compensation, and by failing to give certain instructions concerning nursing care. Finding from the record that Mrs. Rendon's complaints do not warrant a reversal of the judgment, we affirm.

The evidence shows that Mrs. Rendon was employed at Methodist Hospital in Lubbock, Texas, as a housekeeper. On 29 April 1975, she received an injury to her lower back while lifting one end of a bed mattress. After the injury she was treated by her family physician until approximately July of 1975. During this period she was hospitalized and given traction and physical therapy. In July of 1975, the family physician referred her to Dr. R. D. Smith, M. D., an orthopedic surgeon in Lubbock.

Dr. Smith saw Mrs. Rendon on 28 July 1975. The doctor had Mrs. Rendon admitted to the hospital for further traction and physical therapy. In August of 1975, Dr. Smith administered an epidural steriod block and continued, until April of 1976, the course of conservative treatment begun in July 1975. During this period she attempted to work, but when she did the pain would increase. Thus, Dr. Smith referred Mrs. Rendon to Dr. Lester Wolcott, M. D., for an electromyogram examination and to Dr. Jack Dunn for a neurological evaluation. In essence, both examinations showed the absence of objective symptoms of nerve root involvement in the lower back area.

In April of 1976, Mrs. Rendon's chief complaint was continued pain. In the absence of objective symptoms of nerve root involvement, Dr. Smith did not desire to perform surgery on Mrs. Rendon, and this opinion was shared by Mrs. Rendon and her husband. Being also of the opinion that further conservative treatment would have little benefit, Dr. Smith discontinued treatment. Dr. Smith, however, continued to see Mrs. Rendon from April of 1976 through August of 1977. During this period her chief complaint was continued pain. Another electromyogram examination by Dr. Wolcott indicated nerve root involvement at the S–1 level. Dr. Smith maintained the opinion that Mrs. Rendon's situation was a marginal case for surgery.

By August 1977, Mrs. Rendon's condition had gradually and progressively become worse. A myelogram examination showed a protruding or bulging intervertebral disc at the 4th and 5th lumbar vertebrae level.

On 29 August 1977, Dr. Smith performed surgery and removed the protruding disc. After surgery Mrs. Rendon remained in the hospital for approximately ten days.

Dr. Smith testified that the surgery was a success and that Mrs. Rendon was recovering normally. His testimony was as follows:

Q. All right, sir. And what is your opinion, based on the same reasonable medical probability, as to [Mrs. Rendon's] future?

A. I would hope that she would be able, in time, to obtain, or I should say accomplish the same amount of work as would be required by such maid work.

Q. All right, sir. And, Doctor, do you have any estimate as to whether or not we are talking about weeks or months?

A. Well, my usual suggestion of time to return to activities following such a laminectomy and disc removal, is for light work, not sooner than six weeks, six to eight weeks; for heavier work or manual labor, not sooner than six months, and it might be as long as six to twelve months.

Q. All right, sir. Do you find that to be true of Mrs. Rendon in this instance, based upon a reasonable medical probability, and based upon her treatments, the way she has been getting along in your examination of her?

A. Yes, I think so, in general.

Tom Irons, as assistant professor and Program Coordinator for the Rehabilitation Counselors Training Program at Texas Tech University, testified that the chances were slim to nil for an individual in Mrs. Rendon's situation to secure employment. In this connection, the evidence showed that in addition to the back surgery, Mrs. Rendon had a heart problem, was approximately forty-three years old, had a fourth grade education, and had no particular job skills other than working as a housekeeper or maid.

The jury found, *inter alia*, that Mrs. Rendon had 122 weeks of partial disability beginning on the date of injury and ending on 28 August 1977, and 26 weeks total disability beginning on 29 August 1977, the date of

surgery and ending on 27 February 1978. In her fourth point of error, she says the jury's failure to find total and permanent disability is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ The jury's failure to find a fact vital to Mrs. Rendon's recovery need not be supported by affirmative evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). Unfortunately for courts and juries, no precise formula exists by which incapacity may be measured, and the extent and duration of disability is at best an estimate. *Fields v. Texas Employers Insurance Ass'n*, 565 S.W.2d 327, 330 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.); *Gulf Insurance Co. v. Hodges*, 513 S.W.2d 267, 272 (Tex.Civ. App.—Amarillo 1974, no writ).

■ In compensation cases, the extent and duration of incapacity is normally a fact question for the jury. *Fields v. Texas Employers Insurance Ass'n, supra*, at 330; *Montoya v. American Employers Insurance Co.*, 426 S.W.2d 661, 662 (Tex.Civ.App.—El Paso 1968, writ ref'd n. r. e.). In this connection, it is within the province of the jury to judge the credibility of the witnesses and determine the weight to be given their testimony. *Clodfelter v. Martin*, 562 S.W.2d 491, 493 (Tex.Civ.App.—Corpus Christi 1977, no writ). Additionally, the trier of fact is entitled to believe all, part or none of the testimony of any witness and draw its conclusions therefrom. *Pickens v. Baker*, 588 S.W.2d 406, 409 (Tex.Civ.App.—Amarillo 1979, no writ); *Texas Employers Insurance Ass'n v. Stephenson*, 496 S.W.2d 184, 188 (Tex.Civ.App.—Amarillo 1973, no writ).

■ Nevertheless, when the appellant maintains, as in this instance, that the jury's negative finding on a vital issue is against the great weight and preponderance of the evidence, then we are required to weigh all of the evidence and to remand the cause for a new trial if we conclude that the jury's finding on the vital issue is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Traylor v. Goulding, supra*, at 945;

*Parrish v. Hunt*, 160 Tex. 378, 331 S.W.2d 304, 305–06 (1960); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Having considered all of the evidence, we conclude that the jury's failure to find total and permanent disability is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

In point three, Mrs. Rendon claims that she conclusively established that she is totally and permanently disabled by the injury in question. From our review of the evidence, we disagree. *See Traylor v. Goulding, supra*, at 945; *In re King's Estate, supra*, 244 S.W.2d at 661–62.

■ By point one, Mrs. Rendon says the trial court erred by admitting into evidence an undated notice of injury and claim for compensation form signed by her and filed with the Industrial Accident Board. In this connection, she maintains that the evidence is inadmissible because Texas Employers' Insurance Association did not lay a proper predicate under sections 1 and 3 of article 3731a of the Texas Revised Civil Statutes Annotated. We do not agree that the form was inadmissible for the reasons asserted by Mrs. Rendon. Section 1 of article 3731a provides as follows:

> Section 1. *Any written instrument,* certificate, record, part of record, return, report, or part of report, *made by an officer of this State or of any governmental subdivision thereof, or by his deputy, or person or employee under his supervision,* in the performance of the functions of his office and employment, shall be, so far as relevant, admitted in the courts of this State as evidence of the matter stated therein, subject to the provisions in Section 3 (emphasis added).

The undated notice of injury and claim for compensation form signed by Mrs. Rendon is not within the purview of article 3731a. The evidence shows that the written instrument was not "made by an officer of this State or of any governmental subdivision thereof, or by his deputy, or person or employee under his supervision, in the performance of the functions of his office and employment."

■ In point two, Mrs. Rendon maintains the trial court erred by permitting Texas Employers' Insurance Association to cross-examine her before the jury concerning the undated notice of injury and claim for compensation form filed with the Industrial Accident Board. We disagree. As we pointed out above, the undated form was signed by Mrs. Rendon and filed with the Board. A copy of this form was forwarded to Texas Employers' Insurance Association by Mrs. Rendon's attorney. A second notice of injury and claim for compensation form was forwarded to the Industrial Accident Board. The second form was dated. Mrs. Rendon's signature appeared in printed form on the second instrument. A copy of the second instrument was not forwarded to Texas Employers' Insurance Association.

In its answer, Texas Employers' Insurance Association alleged that Mrs. Rendon had not given timely notice of the injury and claim for compensation. To meet her burden of establishing timely notice of her injury and claim for compensation as required by section 4a, article 8307, Texas Revised Civil Statutes Annotated, Mrs. Rendon introduced the dated notice of injury and claim for compensation form filed with the Board. On the undated form, Mrs. Rendon's signature was in script writing and on the dated form, her signature was printed. Texas Employers' Insurance Association's cross-examination related to the different types of signature appearing on the instruments. Mrs. Rendon explained that she signed her name both ways, i. e., by script and by printing. No issue concerning notice of injury was requested or submitted to the jury. Under the circumstances, we conclude that the cross-examination was in the scope of material inquiry. *See Lopresti v. Wells*, 515 S.W.2d 933, 938 (Tex.Civ.App.—Fort Worth 1974, no writ). Moreover, the cross-examination was not reasonably calculated to cause the rendition of an improper judgment in this case. Tex. R.Civ.P. 434.

In point six, Mrs. Rendon contends that the trial court erred by instructing the jury that "the term 'nursing care' does not include services performed, acts done or benefits provided Plaintiff by members of her family unless such services, acts, and benefits were in addition to those ordinarily provided to the Plaintiff as a result of the family relationship." Texas Employers' Insurance Association says the instruction is proper. Both parties rely on *Transport Insurance Co. v. Polk*, 400 S.W.2d 881 (Tex. 1966).

■ In *Transport Insurance Co. v. Polk*, Polk and his wife sought to recover the value of Mrs. Polk's nursing services to her quadriplegic husband. The Polks asserted their claim under section 7, article 8306, Texas Revised Civil Statutes Annotated, of the Workers' Compensation Act. The insurance carrier maintained that a wife may not recover for nursing services which she renders her husband because they are a part of the marital obligation of a wife. The evidence showed "that Mr. Polk [required] constant attention and aid and that Mrs. Polk's care of her quadriplegic husband [was] an extraordinary service beyond that contemplated by the marital relationship." In deciding the issue the court stated: "Mrs. Polk does not seek to enforce a contract she has with her husband. She seeks recovery directly against Transport by reason of its statutory duty to pay for *extraordinary services* which she has rendered her injured husband. Such recovery is permitted" (emphasis added). *Transport Insurance Co. v. Polk, supra*, at 884. The effect of the decision in *Transport Insurance Co.* is that a spouse or family member may recover for nursing services which are extraordinary services beyond those contemplated by the marital or family relationship.

■ In the case before us, Mrs. Rendon claims that after she was released from the hospital, her husband had to cook for her, give her baths, take her to the bathroom, and do the housework; and that her father-in-law sat with her while her husband was at work. She claims the value of these services are nursing services rather than amounts "expended or incurred" for such services.

We do not perceive, as Mrs. Rendon argues, that the instruction implies that even extraordinary services rendered by family members do not entitle her to recover for nursing services. In this cause and aside from any distinction between a requirement of a compensability for nursing services, the ultimate question to be reached, considering the charge as a whole, was whether Mrs. Rendon required compensable nursing services. In this sense, the instruction was, as all instructions should be, given to enable the jury to render its verdict. Here, the instruction was to enable the jury to isolate the ordinary care provided by family members from nursing services per se. While this is not to say that the instruction is a correct one to be given with a nursing services issue generally, we cannot say, under the circumstances of this case, that the giving of the instruction amounts to more than harmless error. Tex.R.Civ.P. 434.

By point seven, Mrs. Rendon says the trial court should have instructed the jury that "the nursing care as used herein includes all those services, if any, provided to Mrs. Rendon as required by her condition resulting from the injury in question." We disagree. Under the circumstances of this case, the requested instruction does not comport with the guidelines set forth in Transport Insurance Co. v. Polk, supra, at 883–85.

In point five, Mrs. Rendon further contends that the trial court erroneously failed to instruct the jury concerning nursing services that "the only notice required is notice of the injury." Again, we disagree.

The only function of an explanatory instruction in the charge is to aid and assist the jury in answering the issues submitted by the court. Union Oil Co. v. Richard, 536 S.W.2d 955, 957 (Tex.Civ.App.— Beaumont 1975, writ ref'd n. r. e.). In this instance, there is no issue in the charge concerning notice, notice of injury or notice of a request for nursing services. Regarding nursing services, the court submitted three issues to the jury. Special issue no. 8 asks: "Do you find that nursing care was reasonably required as a result of such inju-

ry?" The jury answered "no". Conditioned on an affirmative answer to special issue no. 8, the court asks in special issue no. 9, "Do you find that the Defendant failed to furnish within a reasonable time, nursing care reasonably required as a result of such injury." The jury answered "N/A". The only issue in the charge which the requested instruction could remotely relate to is special issue no. 9. Nevertheless, the requested instruction is no more than an abstract proposition; and, as such is not reasonably calculated to aid and assist the jury in answering the issues submitted in the charge.

Furthermore, under the rules of civil procedure, the trial court has considerable discretion in deciding what instructions are necessary and proper when submitting issues to the jury. Tex.R.Civ.P. 277; see Mobil Chemical Co. v. Bell, 517 S.W.2d 245, 256 (Tex.1974). In deciding what instructions are necessary and proper, the only requirement to be observed is that the trial court must give definitions of legal and other technical terms. Union Oil Co. v. Richard, supra, at 958. As stated in Union Oil: "Anything else, however interesting, or, indeed, however relevant to the case in general—which does not aid the jury in answering the issues must be excluded" (emphasis added). Id. at 958. In the case before us, the court defined nursing services. Nothing more is required. Moreover, Mrs. Rendon does not challenge the jury's failure to find that nursing care was reasonably required as a result of her injury. Under these circumstances, she has failed to demonstrate harmful error under rule 434 of the Texas Rules of Civil Procedure.

In summary, we overrule Mrs. Rendon's seven points of error. Accordingly, the judgment of the trial court is affirmed.