The **CITY OF SAN ANTONIO** and David Alonzo, Appellants,

v.

Allen **DUNN** and wife, Sara Dunn, Appellees.

No. 04–89–00346–CV.

Court of Appeals of Texas, San Antonio.

Aug. 15, 1990.

Rehearing Denied Oct. 4, 1990.

Don W. King, Paula Dlugosz, Asst. City Atty., Bernard Campion, Campion & Campion, San Antonio, for appellants.

Ronald B. Brin, Gerald D. McFarlen, Brin & Brin, Corpus Christi, for appellees.

Before REEVES, BIERY and CARR, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a judgment, following a jury trial, which awarded Allen Dunn $10,000.00 and Sara Dunn $8,000.00 for damages they sustained following the wrongful arrest of Allen Dunn by San Antonio Police Officer David Alonzo. The judgment provided for joint and several liability on the part of the City of San Antonio and Officer Alonzo for Allen Dunn's damages and against Officer Alonzo alone for Sara Dunn's damages.

The Dunns and their family arrived in San Antonio to attend the annual livestock show and rodeo held at the Freeman Coliseum. They attempted to park their vehicle in the arena parking lot but were turned away by Officer Alonzo. The Dunns found an alternate parking site and, as they walked to the stadium, Allen Dunn's father-in-law approached Alonzo, apparently to complain about the parking situation or to obtain the name of someone to whom he could complain. On seeing his father-in-law approach the officer, Dunn followed

and joined the "conversation." The evidence is conflicting, but apparently after exchanging some words with Dunn, Alonzo directed him to Alonzo's supervisor, who was standing nearby. Dunn spoke with him. The Dunns were directed to leave the area and go on to the rodeo. Alonzo then arrested Dunn, and, after restraining his hands with handcuffs, transported Dunn to the downtown police station. Dunn's wife, Sara, witnessed the happening. Dunn was booked and charged with disorderly conduct. Following a trial in municipal court, Dunn was found not guilty. The Dunns prosecuted this suit against the City and Alonzo. The jury found that Alonzo's negligence proximately caused Allen Dunn's injuries; that Alonzo falsely arrested Dunn; that Alonzo used excessive force in arresting Dunn, which was a proximate cause of Dunn's injuries; found that $10,-000.00 would compensate Allen Dunn for damages resulting from this occurrence, and $8,000.00 would compensate Sara Dunn for having witnessed this occurrence; failed to find that the City maliciously commenced a criminal proceeding against Dunn when there was no probable cause; and failed to find that Alonzo's use of excessive force was done pursuant to a policy, practice, or custom of the City. The City and Alonzo bring this appeal.

## THE CITY'S POINTS OF ERROR

The City raises several complaints about the damage award in its first point of error.[1] Its main contention is that the trial court erred in awarding damages against Alonzo and the City on a joint and several basis because the City is immune from liability under the doctrine of sovereign immunity.[2]

The Dunns contend that the City waived its complaint because the jury was not asked to segregate damages among the tortfeasors or between the causes of action and the City failed to object to the questions submitted to the jury.

■ The court's charge should, as a general matter, limit the jury's consideration of damages by instructing them on the proper measure of damages. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973); *Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 878 (Tex. App.—Corpus Christi 1988, writ denied).

The City complained to the trial court that damages were not divided among the tortfeasors. The following colloquy took place:

> FOR THE CITY: And as to the damages, my question as to the—or objection as to the [sic] Question Nos. 7 and 8 on damages is in the form of a question. What if the jury finds in some issues against both the City and Alonzo? There's no division in the damages question as to what part of the judgment would be paid by the City and what part by Alonzo. I don't know. I just have a question as to whether that's—if that's—in other words, that's just a difficulty that comes to mind. I'm not sure that's in the form of a firm objection or not.

1. The jury was asked:
   > QUESTION NO. 7
   > What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Allen Dunn for damages, if any, resulting from the occurrence in question?
   > . . . .
   > a. Physical pain and mental anguish in the past.
   > Answer: *$7,500*
   > b. Embarrassment and humiliation in the past.
   > Answer: *$2,500*
   > QUESTION NO. 8
   > What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Sarah [sic] Dunn for damages, if any, arising out of her contemporaneous perception of the occurrence in question?
   > . . . .
   > a. Mental anguish in the past.
   > Answer: *$6,000*
   > b. Embarrassment and humiliation in the past.
   > Answer: *$2,000*

2. We assume that the Dunns limited the false arrest allegation solely to Alonzo since no question was requested concerning the policy, practice, or custom of the City. *See Monell v. Dept. of Social Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *City of Amarillo v. Langley*, 651 S.W.2d 906, 913 (Tex.App.—Amarillo 1983, no writ).

THE COURT: That's a question that comes to my mind, too. There's [sic] some places where the City is accountable, and some where it's not. I know that.

FOR THE DUNNS: They would be jointly and severally liable. If it is on the basis of respondeat superior, then the City would be entitled to indemnity for the—

THE COURT: I tell you—

FOR THE DUNNS: —employee that created the vicarious liability. So we don't really need that.

THE COURT: That's not the question. *The question is, if they find them jointly—where they're jointly and severally and also where they're not.*

FOR THE CITY: Because in Title 19—

THE COURT: I'm not concerned unless and until we have a verdict and then we'll argue about that. The issues are prepared to get the disputed facts answered, and not necessarily for the entry of judgment. I'll have to wait and decipher that.

(Emphasis added.) Although the City's objection was not as clear as it might have been, it did bring to the trial court's attention the insufficiency of the charge. In fact, the court restated the problem to the Dunns' attorney. A similar objection to a jury question was held to be sufficient in *Dawson v. Garcia*, 666 S.W.2d 254, 261 (Tex.App.—Dallas 1984, no writ) (recoverable vs. nonrecoverable items of damage); *see Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 924 (Tex.1983), *overruled on other grounds sub nom. Acord v. General Motors Corp.*, 669 S.W.2d 111, 114 (Tex.1984); TEX.R.CIV.P. 272. The City made the basis of its objection known to the trial court.

■ The Texas Tort Claims Act, TEX. CIV.PRAC. & REM.CODE ANN. §§ 101.-001–101.109 (Vernon 1986 & Vernon Supp. 1990), provides for a limited waiver of governmental immunity for certain torts. The waiver is restricted to any injury arising out of the use of publicly owned vehicles, premises defects, and conditions or use of property. *City of Denton v. Van Page,* 701 S.W.2d 831, 834 (Tex.1986); *McCord v. Memorial Medical Center Hosp.,* 750 S.W.2d 362, 363 (Tex.App.—Corpus Christi 1988, no writ); TEX.CIV.PRAC. & REM. CODE ANN. § 101.021 (Vernon 1986). Even if a claim may fall under one of these categories, the City's immunity is not waived if the claim arises out of an intentional tort. *McCord v. Memorial Medical Center Hosp.,* 750 S.W.2d at 363; *Townsend v. Memorial Medical Center,* 529 S.W.2d 264, 267 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); TEX.CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1986).

■ False arrest is an intentional tort. *See Montgomery Ward & Co. v. Garza,* 660 S.W.2d 619, 621 (Tex.App.—Corpus Christi 1983, no writ); *Sanchez v. Garza,* 581 S.W.2d 258, 259 (Tex.App.—Corpus Christi 1979, no writ). The Texas Tort Claims Act specifically exempts intentional torts from the waiver of immunity. TEX. CIV.PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1986). The City, therefore, has no liability for Alonzo's falsely arresting Dunn. As a result of the intentional torts, the handcuffs were applied so tightly that they caused discomfort and swelling to Dunn's wrist which occurred, in part, while he was being transported to the jail at a high rate of speed. The transportation to jail in a police car owned by the City of San Antonio by a careless and angry police officer, as a consequence of his intentional tort, certainly cannot be attributed to the City as negligence. All of Dunn's damages arose out of the false arrest and the excessive force inflicted on Dunn. Since the claims arise out of the intentional tort, there has been no waiver of immunity, and the City cannot be held liable for Dunn's damages arising out of Alonzo's negligence.

■ The use of excessive force by police is an element of a civil rights action pursuant to 42 U.S.C.A. § 1983 (1981). *City of Amarillo v. Langley,* 651 S.W.2d 906, 913 (Tex.App.—Amarillo 1983, no writ). The federal violation requires a showing that the use of the excessive force is a policy or custom of the City—there is no liability for

the City based on the theory of respondeat superior for this cause of action. *Monell v. Department of Social Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *City of Amarillo v. Langley*, 651 S.W.2d at 913. The jury failed to find that Alonzo's use of excessive force was done pursuant to a policy, practice, or custom of the City. In the absence of a jury finding of such a custom or policy, the City incurs no liability for the officer's use of excessive force.

The City has no liability to Dunn under these circumstances. Thus, the trial court erred in awarding Allen Dunn judgment against the City, jointly and severally or otherwise. That part of the trial court's judgment holding the City jointly and severally liable is reversed and judgment is rendered that the Dunns take nothing from the City.

Our disposition of the City's first point makes it unnecessary to review the City's remaining points.

### OFFICER ALONZO'S POINTS OF ERROR

■ Alonzo first alleges the trial court erred in failing to give the jury his requested instruction and question regarding his defense of qualified immunity that he acted in good faith in making the arrest. It is not necessary that we address this point of error. The defense of qualified immunity arose as a result of plaintiffs' contention that Alonzo had illegally restrained and arrested Dunn. The plaintiffs also alleged, and the jury found, that Alonzo used excessive force in restraining Dunn, a separate and distinct tort. Assuming the trial court erred in not giving the instruction or question requested, it has no bearing on the "excessive force" question. If there is any theory of law that has been pled and supported by adequate evidence that will, if correct, support the judgment of the trial court, the appellate court will affirm the judgment. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977).

In his second point of error, Alonzo complains that the trial court erred in failing to instruct the jury on the elements of the potential crimes with which Dunn might have been charged. He argues that it was not possible for the jury to determine whether probable cause existed for the arrest unless they were given these elements. Alonzo submitted two requested instructions concerning Texas Penal Code violations. The first stated: "You are instructed that Sec. 42.03 of the Texas Penal Code establishes the following as an offense against the laws of this State ..." and the Penal Code is quoted. The second stated the same thing, substituting section 42.01 for section 42.03.

Alonzo cites *Dayton Hudson Corp. v. Altus*, 715 S.W.2d 670 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *cert. denied*, 481 U.S. 1073, 107 S.Ct. 2471, 96 L.Ed.2d 364 (1987), as support. However, in *Dayton Hudson Corp.*, the definition of probable cause was given in conjunction with a question on malicious prosecution. No issue was raised regarding setting out the elements of possible criminal charges or defining "legal justification."

■ The elements of false arrest are a willful detention of the person, against the consent of the person, without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex.1985); *Morales v. Lee*, 668 S.W.2d 867, 869 (Tex.App.—San Antonio 1984, no writ). The trial court properly defined false arrest. The court did not define legal justification, nor was it requested to do so.

■ Alonzo's requested definitions consisted of the statutory language contained in the Texas Penal Code under section 42.-03 (obstructing a highway) and section 42.-01 (disorderly conduct). They made no reference to and included no definition of legal justification or probable cause. This is not a substantially correct definition or instruction. Alonzo failed to properly preserve his complaint that the trial court failed to instruct the jury on legal justification. *Ryan Mortgage Investors v. Fleming–Wood*, 650 S.W.2d 928, 933 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Adam v. Harris*, 564 S.W.2d 152, 155 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.

e.); *Olivares v. Porter Poultry & Egg Co.,* 523 S.W.2d 726, 729 (Tex.Civ.App.—San Antonio 1975, no writ); TEX.R.CIV.P. 278.

Further, the trial court has broad discretion as to the submission of proper definitions and explanatory instructions. *Steinberger v. Archer County,* 621 S.W.2d 838, 841 (Tex.App.—Fort Worth 1981, no writ); *Remuda Oil & Gas Co. v. Nobles,* 613 S.W.2d 312, 316 (Tex.Civ.App. —Fort Worth 1981, no writ); *Rendon v. Texas Employers' Ins. Assoc.,* 599 S.W.2d 890, 896 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Proper instructions are those which help the jury in answering the questions and which find support in the evidence and inferences to be drawn from the evidence. *Steinberger v. Archer County,* 621 S.W.2d at 841; *Southern Pac. Transp. Co. v. Garrett,* 611 S.W.2d 670, 674 (Tex. Civ.App.—Corpus Christi 1980, no writ). Alonzo's requested instructions, as submitted, offer no assistance to the jury in answering the questions. The requested instructions do not instruct the jury how the Penal Code definitions should be applied in determining whether there was a false arrest.

If the meaning of a term used in a question is clear from the evidence, unless it is a legal term needing definition, no explanatory instruction is required. *Steinberger v. Archer County,* 621 S.W.2d at 841; *Rendon v. Texas Employers' Ins. Assoc.,* 599 S.W.2d at 896. "A definition is essential only when the term is a legal expression having a meaning unknown to laymen or is used in … a peculiar legal sense or under circumstances which might confuse or mislead unless explained." *Olivares v. Porter Poultry & Egg Co.,* 523 S.W.2d at 730 n. 1. The term, legal justification, is not a legal expression whose meaning is unknown to laymen nor is it a term which might confuse or mislead the jury.

The burden is on the appellant to show that the trial court's failure to give the properly requested definition or instruction resulted in such a denial of his rights as was reasonably calculated to cause and probably did cause the rendition of an improper verdict. *Steinberger v. Archer County,* 621 S.W.2d at 842; *Southern Pac. Transp. Co. v. Garrett,* 611 S.W.2d at 675; *Rendon v. Texas Employers' Ins. Assoc.,* 599 S.W.2d at 896. Alonzo has failed to make such a showing.

In his third point of error, Alonzo complains that the evidence is factually insufficient to sustain the jury's finding of excessive force.

In resolving a factual insufficiency claim, we must consider and weigh all of the evidence and we will reverse the judgment and remand the cause only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We may not substitute our judgment for that of the jury. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986).

In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court held that, in analyzing a claim based on the use of excessive force in making an arrest, investigatory stop, or other seizure of a person, the Fourth Amendment standard of objective reasonableness must be used. *Id.,* 490 U.S. at ——, ——, 109 S.Ct. at 1867, 1871, 104 L.Ed.2d at 450, 454. Reasonableness is to be judged from the perspective of a reasonable officer on the scene without regard to his mental state. *Id.,* 490 U.S. at ——, 109 S.Ct. at 1872, 104 L.Ed.2d at 455, 456.

Relying on *Graham v. Connor,* the Fifth Circuit Court of Appeals enumerated three elements to be proven in order to recover for damages arising from the use of excessive force in making an arrest, investigatory stop, or other seizure of the person. The three elements are: (1) a significant injury; (2) resulting directly and only from the use of force excessive to the need; and (3) the excessiveness of the force was objectively unreasonable. *Hay v. City of Irving,* 893 F.2d 796, 798 (5th Cir.1990); *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989). The court went on to say that minor harms, injuries that would have occurred without the excessive force, and

transient distress are not actionable under this cause of action. *Johnson v. Morel,* 876 F.2d at 480. Whether the injuries are "constitutionally significant" is a fact issue. *Id.* at 479.

The Dunns contend that the elements added by the *Johnson* court, significant injury and arising solely out of the use of excessive force, must be disregarded because they were not cited as elements in *Graham v. Connor.* The Supreme Court, in *Graham,* was determining the constitutional standard for analyzing this claim. Its opinion in no way precludes the elements found to be necessary by the Fifth Circuit. As stated by the Fifth Circuit in *Hay v. City of Irving,* 893 F.2d at 798, we must follow both *Graham* and *Johnson.* We will review the evidence as to (1) significant injury, (2) resulting only from the use of excessive force, and (3) whether the excessive force was objectively unreasonable.

### I. Significant Injury

Dunn testified that Alonzo grabbed his elbow when making the arrest and mashed and pinched it "severely." Alonzo threw Dunn's arm up behind his back and pushed his arm up toward his hairline. Dunn has "a bad shoulder." He also stated that Alonzo applied the handcuffs tightly and that they got tighter during the ride to the police station with each bump they hit in the road.

Dunn said his wrists were red and swollen and that the handcuffs left indentations in his wrists. His wrists stayed red for about three days. He also said that he had a sharp pain in his left elbow. Other members of Dunn's family testified that his wrists were red and swollen and that his elbow hurt. Approximately ten days after the arrest Dunn went to a doctor because his elbow had been hurting and had gotten worse. He could not use his left arm due to the pain and because it was stiff. The doctor saw him at least twice. Dunn took an anti-inflammatory medication for about two months. It was about six months before he could use his elbow again. No medical testimony was given and no medi-

cal reports or bills were introduced into evidence.

■ There was no contradictory evidence concerning the nature and extent of Dunn's injuries to his wrists and elbow. While we seriously doubt that the reddened wrists constitute a significant injury (*see Johnson v. Morel,* 876 F.2d at 480), there was testimony the jury could have believed that Dunn's elbow was injured to such an extent that he lost the use of it for six months and that he had to take medication to alleviate the swelling in it. The temporary loss of use of a limb is sufficient evidence to establish a significant injury. Further, no special question or instruction was requested to define significant injury nor was an objection made to the absence of such an instruction or question.

### II. Injury Resulting Solely from Use of Excessive Force

Dunn and his family testified that Alonzo grabbed Dunn by his elbow and then threw Dunn's arms over his head before cuffing him. Alonzo stated that he grabbed Dunn's right arm and then his left wrist.

Dunn's mother-in-law testified that Alonzo "had his thumb just indented in [Dunn's] arm and was just man-handling him like he was just a robber or something." Both she and Dunn testified that Dunn offered no resistance, although Alonzo stated that Dunn offered moderate resistance.

Though no one specifically testified that Dunn's elbow injury occurred due to Alonzo's grabbing his elbow, we find the evidence to be clearly sufficient for the jury to have deduced this from the evidence presented. No evidence was offered to indicate the injury occurred other than during or was caused by anything other than Alonzo's use of excessive force. The jury was well within their province as factfinders to determine that Dunn did not resist the arrest, but attempted to acquiesce and that his injury arose only through Alonzo's use of excessive force.

### III. Objective Reasonableness

Alonzo testified that he applied the handcuffs tightly because Dunn "was moving

around too much...." He said that he followed police procedures and used only enough force to get Dunn under custody and restraint. Alonzo said, in response to Dunn's counsel's questioning, that had there been no resistance at all, the amount of force he used would not have been warranted. He also said that the situation did not warrant grabbing hold of Dunn's arm in such a way as to cause pain. He said that once he had the handcuffs on Dunn's right arm, Dunn offered no further resistance.

San Antonio Police Officers Roger Miller and Morris White were also at the parking lot when Alonzo arrested Dunn. They both said that they did not see any excessive force used.

However, Dunn and his family testified that Dunn offered no resistance and put his hand behind his back voluntarily to enable Alonzo to complete the cuffing.

■ Sufficient evidence was offered to establish what reasonable force would be. Alonzo testified that the force he used would be unreasonable if there were no resistance. The jury obviously believed that Dunn offered no resistance. The evidence is sufficient that the injury was significant, and was due solely to Alonzo's objectively unreasonable use of excessive force.

The judgment of the trial court is reversed in so far as it awards judgment against the City and is affirmed in all other aspects. Judgment is hereby rendered that Allen Dunn take nothing from the City of San Antonio and that the Dunns recover judgment from Officer David Alonzo as set out in the judgment of the trial court.