**William J. BURTON, Plaintiff,**

v.

**CAMERON COUNTY, TEXAS; Alex Perez, Individually and in His Capacity as Sheriff of Cameron County; Dr. Gustavo Sterns, Individually and in His Official Capacity as Medical Director of the Cameron County Jail; Dr. James Freeburg, Individually and in His Official Capacity as Head Psychologist of the Cameron County Jail; and Certain John Doe Members of the Cameron County Sheriff's Department and Staff of the Cameron County Jail, Individually and in their Official Capacities, Defendants.**

Civ. A. No. B–94–34.

United States District Court,
S.D. Texas,
Brownsville Division.

April 24, 1995.

Erik R. Sunde, Houston, TX, for plaintiff William J. Burton.

Richard Otto Burst, Cameron County Dist. Attorney's Office, Brownsville, TX, for defendants Cameron County, Texas and Sheriff Alex Perez.

Marion Russell Lawler, III, Sweetman & Wise, Brownsville, TX, for defendant Dr. Gustavo Stern.

## MEMORANDUM AND ORDER

BLACK, United States Magistrate Judge.

Pending before the Court are the following motions:

First—Defendant Dr. Gustavo Stern's Motion for Summary Judgment.

Second—Defendant Cameron County's Motion for Summary Judgment.

The parties have consented to proceed before the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### Factual Background

On March 3, 1994, Plaintiff William J. Burton filed suit against Cameron County, Texas; Sheriff Alex Perez; Dr. Gustavo Stern; Dr. James Freeburg; and unnamed Cameron County jail guards and employees. On July 7, 1994, the claims against Dr. Freeburg were dismissed. On April 19, 1995, the claims against Sheriff Alex Perez, in his individual capacity, were dismissed; therefore, only claims against Sheriff Perez in his official capacity remain. As such, the remaining claims against Sheriff Perez are essentially claims against Cameron County and are treated as such herein.

Mr. Burton was a pretrial detainee at the Cameron County jail between January 3, 1992, and March 5, 1992. According to his Original Complaint, Mr. Burton has AIDS. During his incarceration, Mr. Burton claims that he suffered gross abuses consisting of the following:

a) denial of access to medication;

b) denial of access to his doctor;

c) denial of access to psychological counseling;

d) denial of shaving, haircuts and finger nail and toenail cutting;

e) harassment by jail guards;

f) being forced to use disposable eating utensils;

g) being forced to wash his own clothes;

h) being placed in the infirmary and thus being exposed to illness;

i) being unable to disinfect the telephone;

j) being forced to use the showers in which unnamed defendants had urinated;

k) being forced to sign for medications he did not receive;

l) being denied access to an attorney;

Mr. Burton seeks damages under 42 U.S.C. § 1983, Tex.Civ.Prac. & Rem.Code § 101.001 et seq. ("Texas Tort Claims Act"), negligence, intentional infliction of emotional distress, false imprisonment, assault and battery and "prima facie tort." He claims that his U.S. Constitutional rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments were violated.

Defendants Dr. Stern and Cameron County have each moved for summary judgment. Their motions are addressed separately below.

## SUMMARY JUDGMENT STANDARD

Defendants Dr. Stern and Cameron County seek summary judgment pursuant to Fed. R.Civ.P. 56 which states, in pertinent part: "judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.[1] If the moving party fails

---

1. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. However, if the movant meets this burden, the nonmovant must go beyond the pleadings and make a specific factual showing that there is a genuine issue for trial.[2] Any factual controversies are resolved in favor of the nonmoving party for purposes of deciding a motion for summary judgment.[3]

## DR. STERN'S MOTION FOR SUMMARY JUDGMENT

Dr. Stern has been sued individually and in his capacity as medical director of the Cameron County Jail. Mr. Burton has recited an extensive list of complaints concerning his medical care. Therefore, an overview of his care during his incarceration is in order.

When Mr. Burton was taken to the Cameron County Jail, he told the jailer that he did not want to be put into the general population because he had AIDS and was susceptible to infection. The jailers complied with this request, giving him his own cell in the jail infirmary. The next day, Mr. Burton was interviewed by a jail nurse. He told the nurse which medications he was taking and that Dr. Winter at the Brownsville Community Health Clinic was his treating physician. The nurse listed nine prescriptions in the jail's medical records.[4] Dr. Stern signed this entry, approving the continuation of this medicine as prescribed by Dr. Winter.[5] A few days after his confinement began, a physical exam, including blood work, was done by the jail infirmary staff.

Mr. Burton claims that he was not given his medication as prescribed. For example, one of Mr. Burton's claims is that his prescription for AZT was not properly administered. Based upon the record, it appears that Mr. Burton has a misconception concerning his prescription. Mr. Burton contends that he was to receive AZT five times per day.[6] However, a review of the jail's medical log shows that his prescription called for him to take AZT four times per day.[7]

During his confinement, Mr. Burton's medications were handed to him and he was observed taking them by a nurse.[8] Additionally, Mr. Burton has submitted a log from the jail which indicates when medication was distributed to him.[9] The log is not detailed enough to determine exactly which medications were given during each distribution. Additionally, Mr. Burton concedes that the entire log has not been provided for the Court's review.[10] However, this partial log indicates that Mr. Burton's medications were regularly delivered to him. Furthermore, the records indicate that Mr. Burton's prescriptions were refilled by the jail staff and one pain prescription was changed upon Mr. Burton's request.

Mr. Burton also claims that he was to receive a pentamidine treatment once per month for purposes of preventing pneumonia. He was confined for approximately two months. During this period, this treatment was administered only once.

Mr. Burton further alleges that Dr. Stern's general failure to provide him treatment constituted unreasonable medical care. This contention must be weighed against the following facts. Mr. Burton was kept in the jail infirmary during the totality of his incarceration. At the infirmary, a nursing staff is on duty from 8:00 a.m. until 5:00 p.m., Monday through Friday. Additionally, a nurse is on call 24 hours per day, seven days per week. Furthermore, a careful review of Mr. Burton's medical record shows that there was substantial contact between jail nursing per-

2. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

3. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

4. Pl.'s Resp. to Stern's Mot.Summ.J. Ex. B at 2.

5. *Id.*

6. Pl.'s Resp. to Stern's Mot.Summ.J. at 16.

7. *Id.* Exh. B at 2. The log states "AZT (Retrovir) QID." The Court takes judicial notice that "QID" means four times per day. STEDMAN'S MEDICAL DICTIONARY 1678 (5th unabr. lawyer's ed. 1982).

8. Burton dep. at 370–71.

9. Pl.'s Resp. to Stern's Mot.Summ.J. Exh. D.

10. Pl.'s Resp. to Stern's Mot. at 17, n. 12.

sonnel, Mr. Burton, Mr. Burton's personal physician (Dr. Winter) and the Brownsville Community Clinic staff.

Mr. Burton also complains about the location of the infirmary air ventilator in that it blew air directly into his cell. He was concerned about being exposed to germs. However, Mr. Burton admits that the ventilator's control switch was within his reach and he did turn the ventilator off on occasion.[11]

In spite of these claimed deficiencies in his medical care, Mr. Burton's own physician, Dr. Winter, testified that Mr. Burton's medical and mental conditions were not adversely affected by his incarceration.[12]

Mr. Burton asserts claims against Dr. Stern for constitutional violations pursuant to 42 U.S.C. § 1983, Texas Tort Claims Act, medical negligence, assault, battery and intentional infliction of emotional distress. Dr. Stern asserts qualified immunity as to the 42 U.S.C. § 1983 claims. Furthermore, Dr. Stern attacks each of Mr. Burton's tort claims by asserting that certain elements of each claim are not supported by the record and that the claims are barred by limitations. These points are addressed below.

### A.  42 U.S.C. § 1983 Claims

Dr. Stern has raised qualified immunity as a defense to Mr. Burton's 42 U.S.C. § 1983 claims against him in his official and individual capacities. Dr. Stern is a private physician who has contracted with Cameron County to provide medical services at the jail. In this capacity, he is acting under color of state law for purposes of § 1983.[13]

The Supreme Court and the Fifth Circuit have established an analytical framework to determine whether or not officials acting under color of state law are entitled to the protection offered by qualified immunity.[14]

The first question is whether Dr. Stern pleaded qualified immunity as a defense. He did.

The second question is whether Mr. Burton has claimed a violation of a clearly established constitutional right which was in existence at the time of his incarceration. In January 1992, it was clearly established that a pretrial detainee was entitled to reasonable medical care as part of his Fourteenth Amendment due process rights.[15]

■ A complete review of Mr. Burton's medical records and the affidavits of the jail personnel persuades this Court that Mr. Burton was furnished reasonable medical care while in jail. Admittedly, his care was not perfect. However, the Court is impressed by Dr. Winter's deposition testimony that Mr. Burton suffered no adverse effects while in jail. It is clear from a reading of Dr. Winter's deposition that he has devoted considerable time and attention to the management of Mr. Burton's treatment. The Court gives his testimony great weight. In failing to establish that his Fourteenth Amendment right to reasonable medical care was violated, Mr. Burton has failed to overcome Dr. Stern's qualified immunity defense.

In reaching this conclusion, the Court relies, in part, upon *Mayweather v. Foti.*[16] In affirming that the plaintiff had not established a constitutional violation for unreasonable medical care, the Fifth Circuit stated:

[T]he record shows that he received continuous treatment for his back injury despite his incarceration. The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care … [17]

**11.** Pl.'s Resp. to Stern's Mot.Summ.J. Attach. A at 74.

**12.** Dr. Winter dep. at 48.

**13.** *West v. Atkins,* 487 U.S. 42, 50–51, 108 S.Ct. 2250, 2256, 101 L.Ed.2d 40 (1988).

**14.** *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993).

**15.** *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Grabowski v. Jackson County,* 47 F.3d 1386, 1396 (5th Cir.1995).

**16.** 958 F.2d 91 (5th Cir.1992).

**17.** *Id.*

The Court recognizes that Mr. Burton's medical condition was different from the plaintiff in *Foti.* Notwithstanding, considering the totality of the care received by Mr. Burton while he was incarcerated along with the fact that his physical and mental condition did not change during his confinement, the Court believes the reasoning of *Foti* applies to this case.

Additionally, even if this Court were to find that Mr. Burton was denied reasonable medical care, Dr. Stern is entitled to summary judgment. The majority of Plaintiff's claims (i.e. erratic administration of medicine, cell placement, etc.) are really complaints about the conduct of the infirmary staff. Essentially, Plaintiff asks that Dr. Stern be held vicariously liable for this conduct. Dr. Stern is not liable under § 1983 for the actions of other infirmary personnel.[18]

Accordingly, Dr. Stern's motion for summary judgment as to Mr. Burton's 42 U.S.C. § 1983 claims is **GRANTED.**

### B. Medical Negligence

Mr. Burton alleges medical negligence against Dr. Stern. A medical malpractice case in Texas requires that the Plaintiff show a duty that a physician conform to a certain standard of care, the standard of care and a breach of it, injury and a causal connection between the breach and the injury.[19]

■ Mr. Burton's case against Dr. Stern fails because there has been no showing that Mr. Burton was harmed by any of the alleged shortcomings of the treatment that he received from Dr. Stern. Without repeating the lengthy list of Mr. Burton's claims, it is sufficient to say that Mr. Burton's own physician, Dr. Winter, who treated him extensively both before and after his incarceration, testified that Mr. Burton's confinement had not affected his medical condition or his mental health.[20]

The record contains only one bit of evidence which would lead to the conclusion that Mr. Burton suffered any harm from the claimed defects in his treatment at the jail. Dr. Robert Awe's letter of May 24, 1994, to Mr Burton's attorney states: "Erratic administration of his AZT probably lead to worsening of his peripheral neuropathy."[21] In the Court's opinion, Dr. Awe's letter is not sufficient to demonstrate the existence of a genuine issue of material fact. Additionally, the alleged failure by the infirmary staff to provide Mr. Burton with AZT as prescribed is not conduct which can be imputed on Dr. Stern.[22]

Accordingly, Dr. Stern's motion for summary judgment as to Mr. Burton's medical negligence claim is **GRANTED.**

### C. Assault and Battery Claims

■ Mr. Burton alleges state law tort claims of assault and battery against Dr. Stern based upon a placebo which was administered by an unnamed infirmary staff member on February 24, 1992. These claims are barred by limitations.

Under Texas law, there is a two-year limitations period for bringing personal injury claims.[23] The placebo was administered on February 24, 1992. This action was filed on March 3, 1994, clearly outside the limitations period. Accordingly, Dr. Stern is entitled to summary judgment as to these claims.

### D. Intentional Infliction of Emotional Distress Claim

Mr. Burton alleges that Dr. Stern's conduct amounted to intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must show:

---

18. *Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir.1990).

19. *Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ).

20. Cameron County's Mot.Summ.J. Ex. 3 at 48.

21. Pl.'s Resp. to Dr. Stern's Mot.Summ.J. Ex. K.

22. *Elizondo v. Tavarez,* 596 S.W.2d 667, 671–72 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Miller v. Hood,* 536 S.W.2d 278, 281–82 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

23. Tex Civ.Prac. & Rem.Code § 16.003(a).

1. Defendant acted intentionally or reck-
lessly;

2. The conduct was extreme or outra-
geous;

3. Defendant caused the plaintiff mental
distress; and

4. The mental distress suffered was se-
vere.[24]

Mr. Burton has failed to demonstrate
these elements. Mr. Burton admits that he
was never treated by Dr. Stern, except for
the administration of the placebo.[25] The ad-
ministration of the placebo does not consti-
tute extreme or outrageous conduct. As
such, Plaintiff must ground his intentional
infliction claim based upon Dr. Stern's failure
to act. Considering the significant care pro-
vided by the infirmary staff in coordination
with the care provided by Dr. Winter and the
Brownsville Clinic, any failure by Dr. Stern
to act does not amount to extreme or outra-
geous conduct. Moreover, Dr. Winter testi-
fied that Mr. Burton's mental health was not
adversely affected during his incarceration.[26]

Accordingly, Dr. Stern's motion for sum-
mary judgment is **GRANTED** with respect
to Mr. Burton's claim of intentional infliction
of emotional distress.

### E.  Texas Tort Claims Act

Plaintiff alleges that Dr. Stern is liable in
his official capacity under the Texas Tort
Claims Act (the "Act"). The Court decided
above that Dr. Stern was entitled to sum-
mary judgment with respect to Mr. Burton's
claims for medical negligence, assault, bat-
tery and intentional infliction of emotional
distress. With his claims under the Act, Mr.
Burton adds nothing new to the above dis-
missed claims, except that he is suing Dr.
Stern in his official capacity. Accordingly,
Dr. Stern's motion for summary judgment
with respect to Mr. Burton's claims pursuant
to the Act is **GRANTED.**

## II.  CAMERON COUNTY'S MOTION FOR SUMMARY JUDGMENT

Mr. Burton alleges constitutional claims
pursuant to 42 U.S.C. § 1983 and common
law tort claims pursuant to the Texas Tort
Claims Act against the County and Sheriff
Perez, Dr. Stern and certain unnamed indi-
viduals in their official capacity. The County
has filed a motion for summary judgment
with respect to these claims on the behalf of
itself and the individuals sued in their official
capacity. The claims with respect to Dr.
Stern in his official capacity were addressed
above. The validity of Mr. Burton's remain-
ing claims are addressed below:

### A.  Mr. Burton's § 1983 Claims

Mr. Burton's constitutional claims can be
divided into three categories. The first cate-
gory is the denial of reasonable medical care.
The second category is best characterized as
a generalized complaint about the non-medi-
cal conditions of his confinement. The third
category relates to a Sixth Amendment deni-
al to counsel. These claims are addressed
separately below:

### 1.  § 1983 Claim Related to Medical Care

As discussed above in conjunction with Mr.
Burton's 42 U.S.C. § 1983 claim against Dr.
Stern, a pretrial detainee is entitled to rea-
sonable medical care. As discussed in detail
above, the Court finds that Mr. Burton re-
ceived reasonable medical care during his
incarceration at the Cameron County Jail.

Accordingly, the County's motion for sum-
mary judgment with respect to Mr. Burton's
42 U.S.C. § 1983 claim relating to inadequate
medical care is **GRANTED.**

### 2.  § 1983 Claim Related to Non–Medi-cal Conditions of Mr. Burton's Con-finement.

Plaintiff alleges a 42 U.S.C. § 1983 claim
based upon non-medical conditions of his con-
finement. For instance, Mr. Burton alleges
that he was denied access to shaving, hair
cuts and finger and toe nail cutting; verbally
harassed by unnamed jail guards; forced to

---

**24.** *Twyman v. Twyman,* 855 S.W.2d 619, 621
(Tex.1993).

**25.** Stern's Mot.Summ.J. Ex. A at 629.

**26.** Dr. Winter's dep. at 48.

use disposable eating utensils; forced to wash his own clothes; and forced to use the showers in which unnamed persons had urinated.

The Supreme Court in *Bell v. Wolfish*[27] has set forth the test for evaluating whether conditions imposed upon pretrial detainees violate due process. In accordance with the teachings of *Wolfish*, the Fifth Circuit has stated: "pretrial detainees are entitled to protection from adverse conditions of confinement created by prison officials for a punitive purpose or with punitive intent."[28] If no showing of intent or purpose is made, a court can infer intent if the condition is not reasonably related to a legitimate governmental objective.[29]

■ Admittedly, many of the conditions about which Plaintiff complains have a tenuous relationship to any legitimate governmental objective. However, some of Mr. Burton's complaints, such as those relating to verbal harassment and the disposable eating utensils, simply do not rise to the level of a constitutional violation—they are frivolous.[30] Additionally, the *Wolfish* standard must be weighed with the fact that jails must provide only reasonably adequate hygiene and sanitation conditions.[31] Taking all of Mr. Burton's allegations as true, the Court concludes that Mr. Burton has failed to demonstrate that the jail has not done this.

Accordingly, the County's motion for summary judgment with respect to Mr. Burton's claim relating to the non-medical jail conditions is **GRANTED**.

### 3. § 1983 Claim Related to Denial of Access to Attorney.

■ Mr. Burton was a pretrial detainee for approximately two months. He alleges

that during that period he was never appointed an attorney, despite being indigent. . In addition, he claims he was not allowed access to the law library at the jail. Apparently, a jail representative assisted Mr. Burton in filing a writ of habeas corpus. Mr. Burton was ultimately released and his charges dismissed.

Based upon these facts, Mr. Burton has created a material factual dispute as to whether the County violated his Sixth Amendment right to counsel. Accordingly, the County's motion for summary judgment as to this issue is **DENIED**.

### B. Claims Pursuant to Texas Tort Claims Act.

Mr. Burton alleges tort claims against the County pursuant to the Texas Tort Claims Act. Mr. Burton claims that the administration of a placebo and the placement of his cell with respect to the infirmary ventilator validates his claims. These are a replay of some of the same claims for which the Court granted summary judgment to Dr. Stern.

The Act waives governmental immunity for certain torts. Immunity is waived only for claims arising out of the use of publicly owned vehicles, premises defects, and conditions or use of property.[32] However, even if a claim falls within one of these narrow categories, other restrictions apply. For example, immunity is not waived for intentional torts.[33]

■ Mr. Burton's claims relating to the administration of the placebo are barred for at least two reasons. First, to the extent his claims are based upon assault and battery, they are barred because the Act does not waive immunity for intentional torts. Second, as discussed in conjunction with the allegations against Dr. Stern, these claims are barred by limitations.

**27.** 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

**28.** *Grabowski*, 47 F.3d at 1396.

**29.** *Wolfish*, 441 U.S. at 538, 99 S.Ct. at 1873.

**30.** *See Woodard v. Los Fresnos I.S.D.*, 732 F.2d 1243, 1244 (5th Cir.1984) ("Invocation of § 1983 and the fourteenth amendment to obtain redress ..." for de minimis wrongs "... denigrates the fundamental values that they embody.").

**31.** *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986).

**32.** Tex.Civ.Prac. & Rem.Code 101.021; *see also San Antonio v. Dunn*, 796 S.W.2d 258, 260 (Tex. App.—San Antonio 1990, writ denied).

**33.** Tex.Civ.Prac. & Rem.Code 101.057.

Mr. Burton's claims relating to his cell placement are similarly barred by limitations. Mr. Burton was confined in the same cell during his entire detention, which began on January 3, 1992. This action was not filed until March 3, 1994, well outside the two-year limitations period. Moreover, in the Court's opinion, considering Mr. Burton's lack of injury and ability to control the ventilator switch, this claim is frivolous.

Accordingly, the County's motion for summary judgment with respect to Mr. Burton's tort claims pursuant to the Texas Tort Claims Act is **GRANTED**.

### Summary

It is therefore **ORDERED, ADJUDGED AND DECREED** that Defendant Dr. Stern's Motion for Summary Judgment is, in all respects, **GRANTED**.

It is further **ORDERED, ADJUDGED AND DECREED** that Defendant Cameron County's Motion for Summary Judgment (on behalf of Cameron County and all individuals sued in their official capacity) is **GRANTED** except that the County's Motion for Summary Judgment with respect to the 42 U.S.C. § 1983 claim relating to the denial of counsel and access to the law library is **DENIED**.

The Clerk of this Court shall send copies of this Order to counsel for all parties.